# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

BLAINE KEITH MILAM,
*Plaintiff – Appellant*

V.

MICHEAL E. JIMERSON,
*Defendant – Appellee*

On Appeal from the United States District Court for the Eastern District
of Texas, Tyler Division, No. 6:25-cv-267

# APPELLANT'S BRIEF

JASON D. HAWKINS
Federal Public Defender

Jeremy Schepers
Supervisor, Capital Habeas Unit

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, Texas 75202
(214) 767-2746
(214) 767-2886 (fax)
jeremy_schepers@fd.org

EMILY FOLLANSBEE
efollansbee@texasdefender.org
JARED TYLER
jptyler@texasdefender.org

TEXAS DEFENDER SERVICE
P.O. Box 82236
Austin, TX 78708
Tel: 512-320-8300
Fax: 512-477-2153

**Execution Date: September 25**

# CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

**The Honorable Jeremy D. Kernodle**
Easter District of Texas
Tyler Division

United States District Judge

**Blaine Keith Milam**

Plaintiff–Appellant

**Jeremy Schepers**
Office of the Federal Public Defender
Northern District of Texas

Counsel for Plaintiff–Appellant

**Emily Follansbee**
**Jared Tyler**

Texas Defender Service

**Micheal E. Jimerson,**
Rusk County & District Attorney

Defendant–Appellee

**Tomee Heining**                     Counsel for Defendant–Appellee
Texas Attorney General's Office


Dated: September 10, 2025        <u>/s/ *Jeremy Schepers*</u>
                                     Jeremy Schepers

          Attorney of Record for Plaintiff-Appellant Blaine Milam

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument. This case raises important constitutional questions regarding the constitutionality of state court post-conviction procedures where the Defendant has interfered with the Plaintiff's ability to access evidence that would support a claim of actual innocence. Appellant asserts that oral argument would assist this Court in resolving the case.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................i

STATEMENT REGARDING ORAL ARGUMENT ...............................iii

TABLE OF CONTENTS ...................................................................iv

TABLE OF AUTHORITITES ............................................................vi

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF ISSUES.................................................................. 2

STATEMENT OF THE CASE ............................................................. 3

    I.    Milam's complaint in district court. ...................................... 3

        A.    Milam's conviction and relevant subsequent legal challenges.................................................................. 3

        B.    Forensic developments and Milam's further attempts to access relevant DNA records. ................... 8

        C.    Milam alleged that he had a relevant life and liberty interest and that his due process rights were violated by the Defendant's actions, causing him harm.................................................................. 12

        D.    Milam requested declaratory and injunctive relief............................................................................ 14

    II.    Developments after Milam filed his complaint and the district court's resolution of that complaint. ....................... 15

    III.    After the district court dismissed this case, Milam filed a subsequent state habeas application, still without access to the requested DNA records.................................. 16

SUMMARY OF THE ARGUMENT ..................................................... 16

STANDARD OF REVIEW.................................................................. 17

ARGUMENT .................................................................................... 18

    I.    The court below misunderstood the nature of the due process allegations. ........................................................... 18

# TABLE OF CONTENTS
(continued)

A.    Milam did not assert a liberty interest under Chapter 64........................................................... 19

B.    To the extent the district court held that Milam could not vindicate the relevant life and liberty interest without proceeding under Chapter 64, that is also wrong........................................................ 21

C.    The claim raised by Milam met the low Rule 12(b)(6) threshold......................................................... 25

II.    The court below erred by holding that Milam only sought mandamus relief. ..................................... 33

III.    The court below erred by rejecting Milam's factual allegations and Milam does not have the requested electronic data. ...................................................... 38

CONCLUSION ............................................................................ 40

CERTIFICATE OF SERVICE ................................................... 41

CERTIFICATE OF COMPLIANCE.......................................... 41

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

*Abraham v. Alpha Chi Omega,*
    708 F.3d 614 (5th Cir. 2013)..................................................... 36

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)......................................................... 17, 18

*Ballinger v. United States,*
    216 U.S. 240 (1910).............................................................. 34

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................. 18

*Collins v. Morgan Stanley Dean Witter,*
    224 F.3d 496 (5th Cir. 2000)..................................................... 17

*Dist. Attorney's Off. for Third Jud. Dist. v. Osborne,*
    557 U.S. 52 (2009)......................................................... 23, 24, 25

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006).............................................................. 35

*Edelman v. Jordan,*
    415 U.S. 651 (1974).............................................................. 37

*Evitts v. Lucey,*
    469 U.S. 387 (1985).............................................................. 22

*Gates v. Cook,*
    376 F.3d 323 (5th Cir. 2004)..................................................... 37

*Georgia Railroad & Banking Co. v. Redwine,*
    342 U.S. 299 (1952).............................................................. 37

*Ex parte Harding,*
    219 U.S. 363 (1911).............................................................. 35

*Hicks v. Oklahoma,*
447 U.S. 343 (1980)............................................................22

*Hutto v. Finney,*
437 U.S. 678 (1978)............................................................37

*John Doe v. Hillsboro Independent School Dist.,*
81 F. 3d 1395 (5th Cir. 1996)............................................39

*Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N. C.,*
452 U.S. 18 (1981)..............................................................25

*Milam v. Davis,*
586 U.S. 924 (2018)..............................................................6

*Neitzke v. Williams,*
490 U.S. 319 (1989)............................................................39

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984)........................................................36, 37

*Powell v. McCormack,*
395 U.S. 486 (1969)............................................................38

*Quern v. Jordan,*
440 U.S. 332 (1979)............................................................37

*Ruiz v. Brennan,*
851 F.3d 464 (5th Cir. 2017)..............................................17

*Ruiz v. Estelle,*
679 F.2d 1115 (5th Cir. 1982)............................................37

*Scheuer v. Rhodes,*
416 U.S. 232 (1974)............................................................37

*M.D. ex rel. Stukenberg v. Abbott,*
929 F.3d 272 (5th Cir. 2019)..............................................37

*Work v. United States,*
    267 U.S. 175 (1925)............................ ...........................................35

*Ex parte Young,*
    209 U.S. 123 (1908)............................ ...........................................34

**State Cases**

*Ex parte Elizondo,*
    947 S.W.2d 202 (1996) ............................ ...................................... 12, 21

*Ex parte Gutierrez,*
    337 S.W.3d 883 (Tex. Crim. App. 2011) ... ..................................... 19, 21

*Milam v. State,*
    2012 WL 1868458 (Tex. Crim. App. May 23, 2012) ........................3, 5

*Ex parte Milam,*
    2013 WL 4856200 (Tex. Crim. App. Sept. 11, 2013) ...........................5

*Ex parte Milam,*
    2019 WL 190209 (Tex. Crim. App. Jan. 14, 2019) ..............................7

*Ex parte Milam,*
    2020 WL 3635921 (Tex. Crim. App. July 1, 2020) ..............................8

*Thacker v. State,*
    177 S.W.3d 926 (Tex. Crim. App. 2005) ... .......................................21

**Federal Statutes**

18 U.S.C. § 3599 ............................................................................6

28 U.S.C. § 1291 ............................ ...........................................1

28 U.S.C. § 1331 ............................ ...........................................1

28 U.S.C. § 1343 ............................ ...........................................1

# TABLE OF AUTHORITIES
(continued)

**Page**

28 U.S.C. § 2201 ................................ ............................................ 1

28 U.S.C. § 2202 ................................ ............................................ 1

42 U.S.C. § 1983 ................................ .......................... 1, 3, 17, 37

**State Statutes**

Tex. Code Crim. Proc. art. 11.071 ................ .................................. 13, 27

Tex. Code Crim. Proc. art. 11.073 ................ .......................... 6, 8, 13, 29

Tex. Code Crim. Proc. art. 39.14 .................. ................................... 5, 27

Tex. Code Crim. Proc. art. 64 ....................... ................................ *passim*

Tex. Gov't Code § 411.147 ........................ ............................................ 9

Tex. Gov't Code § 411.153 ........................ ...................................... 9, 10

**Rules**

Fed. R. App. P. 4 ................................. ............................................. 1

Fed. R. Civ. P. 12 ................................. ................................ *passim*

# JURISDICTIONAL STATEMENT

This action was filed in the United States District Court for the Eastern District of Texas, pursuant to 42 U.S.C. § 1983, to redress deprivations of rights secured by the Constitution and laws of the United States. ROA.4-19. The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3)-(4), and 2201-2202. On August 22, 2025, the district court entered final judgment dismissing the complaint under Federal Rule of Civil Procedure 12(b)(6). ROA.226-41. Milam timely filed a notice of appeal on September 2, 2025. ROA.243; *see* Fed. R. App. P. 4(a)(1)(A). This Court has jurisdiction under 28 U.S.C. § 1291, which grants courts of appeals jurisdiction over appeals from final decisions of the district courts of the United States.

## STATEMENT OF ISSUES

**Issue One:** Whether the district court erred in concluding that the complaint failed to state a claim for relief when it failed to analyze the asserted liberty interest Milam raised and misconstrued the nature of the asserted violation.

**Issue Two:** Whether the district court erred in concluding that the complaint failed to state a claim for relief by holding that Milam only sought mandamus relief where that was not the relief sought.

**Issue Three**: Whether the district court erred in concluding that the complaint failed to state a claim for relief by ignoring factual allegations made in the complaint and concluding that no DNA records exist that Milam does not have access to.

## STATEMENT OF THE CASE

### I.     Milam's complaint in district court.

#### A.     Milam's conviction and relevant subsequent legal challenges.

This is an appeal of a civil action brought by Plaintiff-Appellant Blaine Milam pursuant to 42 U.S.C. § 1983. Milam alleged that Texas's post-conviction procedural regime, including the discretion it affords Defendant-Appellee District Attorney Micheal Jimerson, operated to deprive him of due process by withholding from him access to evidence in the State's possession that he seeks to help prove his innocence in multiple state-created channels. ROA.4-19. The court below dismissed Milam's complaint under Federal Rule of Civil Procedure 12(b)(6). ROA.226-41. The allegations Milam made in his complaint are summarized below.

At a trial held in 2010, Defendant in the suit below, Rusk County & District Attorney Micheal Jimerson, obtained a capital murder conviction and death sentence against Milam based primarily upon forensic odontological, serological, and DNA evidence. *See Milam v. State*, 2012 WL 1868458 (Tex. Crim. App. May 23, 2012). With respect to serological and DNA evidence specifically, the State presented testimony

from a serologist and a forensic biologist from the Southwestern Institute of Forensic Sciences ("SWIFS"), a governmental laboratory the Defendant utilized to assist his investigation. ROA.8. The State relied on the testimony from both witnesses to meet its burden of establishing Milam's guilt beyond a reasonable doubt.

Specifically, the State relied on testimony that several items of Milam's clothing tested presumptively positive for trace amounts of blood that were not visible to the human eye. ROA.8. The State also relied on testimony that the DNA profile from the decedent, who was a child in Milam's care, either "matched" or was consistent with DNA samples taken from Milam's shirt and jeans. ROA.8. Finally, Defendant relied on testimony that Milam was included as a possible contributor to DNA from swabs of injuries on the deceased's body. ROA.8.

Milam's trial counsel contended that the DNA evidence purporting to connect Milam to the deceased's body had little to no probative value, because Milam was a caretaker of the deceased and they lived together in the same house. ROA.8. Thus, his DNA would be expected to be present on her and hers on him.

The Court of Criminal Appeals of Texas ("CCA") affirmed Milam's conviction and sentence on May 23, 2012. *See Milam*, 2012 WL 1868458. Milam also invoked Texas's post-conviction relief procedures. ROA.9. Ultimately, the CCA denied the application on September 11, 2013. *Ex parte Milam*, 2013 WL 4856200 (Tex. Crim. App. Sept. 11, 2013).

On January 1, 2014, Texas's Michael Morton Act ("MMA") became effective. Tex. Code Crim. Proc. art. 39.14. The MMA provided for discovery of the State's file as a matter of right for the first time in Texas criminal trials. The Texas Legislature's objective in passing the law was to prevent wrongful convictions and ensure a fair trial by mandating that prosecutors provide broad, open-file discovery to the criminally accused. ROA.9-10. Recognizing the importance of information discovery to unearthing wrongful convictions, the Legislature included a provision requiring prosecutors to "promptly disclose the existence" of any exculpatory, impeachment, or mitigating document, item, or information "at any time," including after trial. Tex. Code Crim. Proc. art. 39.14(k). The MMA was made prospective only, limited to offenses that occurred on or after its effective date.

On September 10, 2014, Milam sought habeas corpus relief in federal court, which concluded by the denial of a writ of certiorari on October 9, 2018. *Milam v. Davis*, 586 U.S. 924 (2018) (Mem). On October 4, 2018, Jennae Swiergula from Texas Defender Service and Jason Hawkins of the Federal Public Defenders Office of the Northern District of Texas were appointed by the United States District Court for the Eastern District of Texas to represent Milam pursuant to 18 U.S.C. § 3599 in substitution for prior counsel. ROA.10.

Later that year, Milam, through newly appointed counsel, reviewed files made available to him by District Attorney Jimerson and by the Office of the Attorney General of Texas ("OAG"), which had participated in Milam's trial as a part of the prosecution team. ROA.10. Through that file review, Plaintiff obtained portions of the DNA records from SWIFS pertaining to Milam's case. ROA.10.

On January 7, 2019, Milam filed a second application for a writ of habeas corpus in state court alleging, inter alia, a claim under Texas Code of Criminal Procedure Article 11.073 ("Article 11.073 claim"). ROA.10. Specifically, he alleged that State-sponsored testimony from a forensic odontologist purporting to identify various injuries on the

deceased as human bite marks and purporting to identify Milam as the source of those injuries was insufficiently reliable to be admissible in light of new scientific evidence that was not available at the time of trial. ROA.10. Milam continued to take the position that the DNA evidence presented at trial was immaterial to his conviction given the circumstances of the case.

The CCA authorized the 11.073 claim and remanded it for evidentiary consideration by the state district court. *Ex parte Milam*, 2019 WL 190209 (Tex. Crim. App. Jan. 14, 2019). The state district court, however, declined to hold a hearing and summarily recommended denial on the pleadings. In doing so, the state district court wholesale adopted proposed findings of fact and conclusions of law drafted and submitted by District Attorney Jimerson. ROA.11.

The state district court's recommendation concluded that Milam could not meet his burden of showing that he would not have been convicted even if the odontological opinion testimony had been excluded because, inter alia, the DNA evidence presented by District Attorney Jimerson continued to connect him to the deceased. ROA.11. Specifically, the state district court adopted conclusions that the "DNA evidence taken

from injuries on [the decedent's] body more strongly points to [Milam] as the contributor" of the DNA; that "the explanation that DNA could have been left on [the decedent's] elbow while [Milam] attempted to perform CPR" was "not credible;" and that the DNA evidence "link[ed Milam] to the injuries" on the decedent. ROA.11.

On July 1, 2020, without affording any additional process, the CCA adopted most of the trial court's findings, including all the findings referenced above, and denied the application. *Ex parte Milam*, 2020 WL 3635921 (Tex. Crim. App. July 1, 2020).

## B.     Forensic developments and Milam's further attempts to access relevant DNA records.

In March 2023, the National Institute of Standards and Technology ("NIST") published a new report, *Bite Mark Analysis: A NIST Scientific Foundation Review*, that established a scientific consensus that opinions purporting to exclude or not exclude a particular individual's dentitions as the source of injuries on skin is not scientifically supportable. In its 2020 denial of his habeas application, the CCA had determined that such testimony was scientifically supportable in Milam's case. ROA.12. In light of this new development, Milam anticipated presenting actual innocence and Article 11.073 claims in a subsequent state habeas

application. He also anticipated invoking Texas's actual innocence gateway to obtain consideration of these and other habeas claims. ROA.12.

On September 9, 2024, Milam, through counsel, sent a request to SWIFS requesting a complete copy of the lab's DNA file related to his case. ROA.12-13. SWIFS in turn sent a letter to the OAG asserting the case-specific records were confidential by law and could not be disclosed to the public pursuant to Texas Government Code § 411.153(a). ROA.13.

Milam, through counsel, then wrote to counsel for SWIFS to clarify that the request for the DNA records was not a request for public information but was made as counsel for Milam in connection with his criminal case. ROA.13. Milam asserted that Texas Government Code § 411.147(c)(3) permitted DNA records to be disclosed "for criminal defense purposes to a defendant, if related to the case in which the defendant is charged." ROA.13. A copy of the letter was also sent to the OAG in connection with SWIFS's opinion request. ROA.13.

On December 16, 2024, the OAG issued an opinion that the case-specific DNA records requested were not subject to disclosure under the Public Information Act. ROA.13. The OAG opinion recognized that Milam

had asserted a right of access to the information at issue pursuant to Texas Government Code § 411.147(c)(3), but it ruled that this section "applies only to records maintained by DPS [Texas Department of Public Safety]." ROA.13. Because the DNA records requested were maintained by SWIFS and not DPS, the OAG concluded that provision was "not applicable" and that SWIFS was therefore required to withhold the DNA records in conjunction with § 411.153.[1] ROA.13.

Milam contacted Defendant and, on April 8, 2025, requested that he obtain and provide to Milam the DNA records from SWIFS. ROA.13. Milam made this request, in part, in light of recent changes in science relating to DNA transfer that implicate prior materiality adjudications. ROA.13-14. That is, the scientific community now recognizes that it is not possible to know the mechanism through which DNA was deposited on a surface, including whether the transfer was direct or indirect. ROA.14. Moreover, flaws in the way SWIFS interpreted mixture samples at the time suggested that reinterpretation of the DNA testing might be

---

[1] DPS is capable of conducting DNA testing and does so in many criminal cases. Thus, Defendant Jimerson's decision to have SWIFS conduct the DNA testing in this case had the downstream effect of blocking Milam's access to the DNA records that he still seeks.

required. Additionally, Milam assessed that certain DNA testing results should be considered inconclusive or uninterpretable, contrary to the opinions testified to by State's witnesses at trial. ROA.14.

District Attorney Jimerson denied Milam's request to access the records. ROA.14. In doing so, District Attorney Jimerson did not deny the records were exculpatory or material. On April 11, 2025, Milam, through counsel, sent District Attorney Jimerson a formal discovery request letter. ROA.14. That letter went unanswered. ROA.14.

On April 16, 2025, Milam filed a discovery motion in his underlying criminal case requesting an order directing District Attorney Jimerson to produce all of SWIFS's DNA records. ROA.51-59. District Attorney Jimerson opposed the request. ROA.61-77. The District Attorney asserted that the state district court lacked jurisdiction to hear the motion and denied the applicability of the MMA provision requiring him to disclose favorable information to Milam. The District Attorney did not deny that the records Milam sought are exculpatory or material. On May 23, 2025, the court summarily denied Milam's motion without providing reasons. ROA.88.

**C. Milam alleged that he had a relevant life and liberty interest and that his due process rights were violated by the Defendant's actions, causing him harm.**

Milam's complaint identified two relevant interests. First, that he had a life interest that is not extinguished until his execution. ROA.8 Second, Texas created a relevant liberty interest based on the post-conviction review procedures that it has developed. ROA.7. Milam identified three parts of those procedures that he anticipated invoking, which constitute a state-created liberty interest that he wanted to utilize.

First, Texas's post-conviction review procedures permit an individual to obtain relief from a criminal judgment by showing they are actually innocent. ROA.7; *see Ex parte Elizondo*, 947 S.W.2d 202 (1996). To obtain relief under this avenue, the individual must prove by clear and convincing evidence that a jury would acquit him based on newly discovered evidence.

Second, Texas's post-conviction review procedures permit any person to obtain relief from a criminal judgment by showing that, by a preponderance of the evidence, had scientific evidence not discoverable through the exercise of due diligence at the time of trial been presented

at trial, the person would not have been convicted. ROA.7; Tex. Code Crim. Proc. art. 11.073.

Third, Texas's post-conviction review procedures generally prohibit a court from considering the merits of claims presented in any habeas corpus application filed after the statutory time limit for filing an initial habeas corpus application. ROA.7. However, an exception exists where the application contains sufficient specific facts establishing by a preponderance of the evidence that, but for a violation of the United States Constitution, no rational juror could have found the applicant guilty beyond a reasonable doubt. Tex. Code Crim. Proc. art. 11.071. § 5(a)(2).

Milam alleged that he was harmed by the Defendant's failure to provide him with the requested DNA records. Among other records he requested, Milam asked for electronic data from the DNA testing that occurred at trial that he was aware SWIFS had in its possession but had refused to turn over. ROA.5, 15, 44, 47, 194-95. Milam alleged that Texas's post-conviction review procedures provide no other mechanism for obtaining the records, ROA.14; that the DNA records he had seen reflected that SWIFS inconsistently applied its DNA testing protocols,

reflecting a biased testing strategy, ROA.14-15; and that reviewing the electronic data created by SWIFS would permit Milam to evaluate the limitations in the DNA testing, investigate SWIFS's potentially biased testing methods, assess whether other potential contributors can be included or excluded from the DNA profiles obtained from the evidentiary samples, and help Milam prove that SWIFS's conclusions that he could not be excluded as a contributor to certain samples are so unreliable that they should not have been admitted at trial, ROA.15.

In sum, Milam's complaint alleged that the Defendant violated his due process rights when, acting under color of state law, he refused to disclose the requested DNA records, which thus violated Milam's due process right by interfering with his ability to access and utilize available state post-conviction procedures. ROA.16.

## D. Milam requested declaratory and injunctive relief.

To remedy this due process violation, Milam requested declaratory relief that the Defendant's actions violated his rights to procedural due process and injunctive relief compelling the Defendant to produce the requested records. ROA.17.

## II.    Developments after Milam filed his complaint and the district court's resolution of that complaint.

After the complaint in this case was filed, SWIFS repudiated the testimony its DNA analyst gave at Milam's trial and admitted that reinterpretation of certain samples was necessary. ROA.170-82, 194. Also after the complaint was filed, District Attorney Jimerson disclosed over 4000 pages of DNA records produced by SWIFS during its initial testing and reinterpretation; however, District Attorney Jimerson never produced the electronic data created by SWIFS from the original testing. ROA.194-95.

District Attorney Jimerson filed a motion to dismiss the complaint. ROA.91-128. The district court held that Milam failed to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). ROA.226-241. The district court held Milam failed to state a due process violation because (1) he failed to challenge the adequacy of procedures under Texas Code of Criminal Procedure Chapter 64, ROA.236-38; (2) he focused his complaint on the district attorney who has not enforced Chapter 64 against him, ROA.238-39; (3) the federal court lacks the power to grant mandamus relief against a state official, ROA.239-40; and (4) Milam did

not allege that additional DNA records exist apart from what he already received, ROA.240-41.

### III. After the district court dismissed this case, Milam filed a subsequent state habeas application, still without access to the requested DNA records.

Due to his rapidly approaching execution date, Milam filed his subsequent state habeas application on September 2, 2025, after the district court dismissed the instant case. Due to the Defendant's interference and refusal to provide the requested DNA records, Milam was forced to attempt to meet the procedural gateways Texas has established for consideration of subsequent applications without the requested records.

### SUMMARY OF THE ARGUMENT

The district court judgment should be reversed for three reasons. First, the district court erred when it dismissed Milam's complaint for failing to state a claim by misconstruing the nature of the due process violation or the scope of the right he asserted. The district court's denial rested on its apparent belief that Milam was challenging the procedural adequacy of Chapter 64, Texas's statute regarding DNA testing procedures. Milam did not. Further, the court appeared to erroneously

hold that due process protections for proving innocence after conviction applies only to the State's withholding of biological material in its possession; such a construction of due process is incompatible with Supreme Court precedent as well as the nature of the right. Second, the district court erred when it dismissed Milam's complaint because it construed it as a request for mandamus relief. Milam, in fact, requested declaratory and injunctive relief. The court's holding in this regard is incompatible with longstanding and well-established Supreme Court precedent to the contrary and that recognizes (and has affirmed) grants of injunctive relief against state officials, including in cases brought pursuant to 42 U.S.C. § 1983. Finally, the district court erred when it dismissed Milam's complaint under Rule 12(b)(6) based on its factually incorrect finding that no DNA records existed that Milam does not have access to.

## STANDARD OF REVIEW

This Court reviews de novo the dismissal of a complaint under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017). In this circuit, "[a] motion to dismiss under rule 12(b)(6) is viewed with disfavor and is rarely granted." *Collins v.*

*Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000) (internal quotation omitted). "The district court may not dismiss a complaint under rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation omitted).

At this stage, this court accepts as true all well-pleaded factual allegations and draws reasonable inferences in the plaintiff's favor, but it disregards legal conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). To survive a Rule 12(b)(6) motion, a plaintiff must merely "nudge[] their claim across the line from conceivable to plausible," *id.* at 570, by stating a facially plausible claim for relief. *Iqbal*, 556 U.S. at 678.

## ARGUMENT

I. **The court below misunderstood the nature of the due process allegations.**

The district court fundamentally misunderstood either the nature of the due process claim Milam urged or the scope of the due process right when it held that he failed to state a claim for relief because he "fail[ed] to allege how Chapter 64 deprived him of due process." ROA.236. This holding shows that either the district court misunderstood the liberty interest at issue or it concluded that the process due a prisoner before

being deprived of his life and liberty interests to prove his innocence after conviction is constitutionally limited to that which Texas affords by Texas Code of Criminal Procedure Chapter 64. Regardless of which of those occurred, the district court's analysis was plainly incorrect. Milam's actual claim meets the low Rule 12(b)(6) standard.

## A. Milam did not assert a liberty interest under Chapter 64.

The district court resolved Milam's claim as if it was one related to the liberty interest created by Chapter 64. That provision is a Texas statute that grants prisoners a qualified right to access biological material evidence in the State's possession after conviction for DNA testing. Tex. Code Crim. Proc. art. 64. The district court repeatedly referenced Chapter 64 in its opinion:

- "Milam fails to allege how Chapter 64 deprived him of due process here. Milam does not assert a facial or an as-applied challenge to Chapter 64. Nor does he contend that he meets any element of the test stated in Chapter 64." ROA.236.

- "Milam did not assert that he was entitled to the DNA records pursuant to Chapter 64." ROA.236.

- The court concluded that Milam's "failure to challenge the adequacy of the Chapter 64 procedures" was "fatal" to a due process claim. ROA.236-37.

- "The *Gutierrez* and *Woods* [sic] plaintiffs both claimed that Chapter 64 violated their right to procedural due process.

Without proceeding under Chapter 64 or attacking Chapter 64, Milam lacks a mechanism to trigger due process as he does not have a freestanding federal substantive due process right to post-conviction DNA testing." ROA.238.

- Milam "focuses his attack on the D.A., but the D.A. has not enforced Chapter 64 against him," ROA.238, and "[u]nder these facts, to say that the D.A. 'enforced' Chapter 64 is not plausible." ROA.239.

In so doing, the district court misconstrued the nature of the due process claim Milam alleged. Milam did not complain about any denial of access to biological material in the State's possession; he asserted a desire to access DNA *records* in the control or custody of Defendant District Attorney Jimerson. As such, Milam had no need to invoke Chapter 64 in state court and did not do so. Thus, he could not and did not complain about how it was applied. To the extent the district court believed Milam was challenging Texas's application of Chapter 64 to him, it misconstrued the allegations and claim.

Nowhere in his complaint did Milam allege that his due process rights were violated by Chapter 64. In fact, Milam did not cite that provision *at all* in his complaint. Yet, the district court's analysis operates as if Chapter 64 was the liberty interested Milam asserted. Instead, Milam clearly asserted a life interest and a liberty interest based on

Texas's post-conviction procedures under *Ex parte Elizondo*, Article 11.071, and Article 11.073. ROA.7.

**B.** **To the extent the district court held that Milam could not vindicate the relevant life and liberty interest without proceeding under Chapter 64, that is also wrong.**

If the district court properly understood Milam's complaint but determined that proceeding to request records under Chapter 64 was necessary, that was equally wrong. Milam explained that he was not seeking additional DNA testing, ROA.48, which is the purpose of Chapter 64. *See Ex parte Gutierrez*, 337 S.W.3d 883, 890 (Tex. Crim. App. 2011) ("Exculpatory DNA testing results do not, by themselves, result in relief from a conviction or sentence. Chapter 64 is simply a procedural vehicle for obtaining certain evidence 'which might then be used in a state or federal habeas proceeding.'" (quoting *Thacker v. State,* 177 S.W.3d 926, 927 (Tex. Crim. App. 2005)). Instead, he was seeking records relating to DNA testing already conducted at the time of trial.

In this scenario, the court apparently concluded that the process due a prisoner before depriving him of his life and liberty interests in proving his innocence after conviction is entirely limited to the State's provision of access to biological material for DNA testing. The conclusion

that, as a matter of law, a State's post-conviction denial of access to evidence can violate due process only as to biological material is incompatible with the relevant Supreme Court precedent as well as the very nature of due process.

The district court misunderstood the scope of the due process right. Although the Due Process Clause does not itself confer any right to postconviction relief, when a State chooses to create a statutory mechanism through which a prisoner may attempt to prove innocence after conviction, like Texas has, the Constitution imposes requirements on how that scheme is administered. The Supreme Court has consistently held that once a State creates a liberty interest, due process requires that the interest not be arbitrarily or fundamentally unfairly denied. *See Evitts v. Lucey*, 469 U.S. 387, 400–01 (1985) (due process guarantees a criminal appellant not just a right to appeal, but a fair one); *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980) (when a state creates a statutory right, denial of that right in an arbitrary manner violates due process).

The Supreme Court has specifically recognized that a state which permits a prisoner to obtain relief from an otherwise valid criminal judgment by proving his innocence imbues the prisoner with life and

liberty interests that he may not be deprived of absent due process. *Dist.*

*Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52 (2009). In

*Osborne*, the prisoner asserted the State had deprived him of due process

by withholding access to biological material within its possession,

claiming that DNA tests of the material would permit him to prove his

innocence. The Court declined to recognize a free-standing substantive

due process right to obtain the evidence, but it held that once a State

establishes a liberty interest in proving innocence after conviction, the

procedures must comport with fundamental fairness. The Court

explained that a prisoner may bring a procedural due process claim

alleging that "the State's procedures for postconviction relief are

fundamentally inadequate to vindicate the substantive rights provided"

*id.* at 69, although the threshold for invalidating such procedures is high.

The animating principle is thus neither that due process compels

states to create postconviction innocence procedures, nor that once they

exist every procedural shortcoming becomes constitutionally suspect.

Rather, the doctrine is that when the State creates a vehicle to vindicate

a prisoner's claim of actual innocence, it cannot administer that vehicle

in a way that is fundamentally arbitrary, unfair, or inconsistent with the

very right the statute recognizes. To permit otherwise would be to allow the State to offer prisoners a remedy in name only, frustrating both the promise of its own law and the core protection against arbitrary government action enshrined in the Due Process Clause. In short, the due process right at stake is modest but real: a State that chooses to open the door to postconviction innocence claims cannot then close it by administering its statutes in a way that is illusory or capricious.

To the extent the district court believed that due process only implicates the way the State administers access to evidence in biological material form, it was conflating the specific complaints made in cases like *Osborne*—denial of access to biological material—with the scope of due process. Prisoners may assert that withholding access to biological material deprives them of due process to prove their innocence after conviction, but nothing in *Osborne* or any other case suggests that due process can be violated in this context *only* where the State withholds access to biological material from a prisoner. "Applying the Due Process Clause is [] an uncertain enterprise which must discover what 'fundamental fairness' consists of *in a particular situation* by first considering any relevant precedents and then by assessing the several

interests that are at stake." *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N. C.*, 452 U.S. 18, 24 (1981).

**C.   The claim raised by Milam met the low Rule 12(b)(6) threshold.**

Looking at the actual claim Milam raised and comparing it to the relevant law, Milam met the low Rule 12(b)(6) threshold. To ascertain whether due process was violated in *Osborne*, the Court looked at the entirety of the state's post-conviction procedures as they existed in the statute there and had been applied to the prisoner. *Id.* at 69–71. As the Court observed, Osborne had not invoked the state's post-conviction procedures, so the Court could not ascertain how they had been applied to him. Milam's complaint explained the post-conviction procedures he invoked and why they failed to afford him the process due. ROA.6-17. *Osborne* recognizes that, whenever due process for a deprivation of the right to prove innocence after conviction is invoked, it is the prisoner's "burden to demonstrate the inadequacy of the state-law procedures available to him in state postconviction relief." Milam did so.

Specifically, Milam asserted (1) Texas granted life and liberty interests to Milam by permitting him to avoid execution and imprisonment upon a showing of sufficient evidence that he is actually

innocent, ROA.7-8; (2) Defendant District Attorney Jimerson has custody or control over DNA records that are known to exist,[2] ROA.6; (3) the DNA records that are known to exist may help Milam prove his innocence, ROA.13-15; (4) Texas's post-conviction procedure regime as a whole, including the discretion they place in the District Attorney to withhold or provide access to evidence, have operated in this case to deprive Milam of his life and liberty interests without due process, ROA.15-16.

As Milam asserted in his complaint, Texas has post-conviction procedures that permit the filing of habeas applications and certain motions, but no procedure specifically for obtaining access to evidence in the State's possession (other than, specifically, evidence in "biological material" form) prior to filing a post-conviction habeas application. ROA.5. This permits state actors to interfere with and impede death-sentenced individuals' ability to meet the relevant statutory requirements for authorization of subsequent habeas applications.

---

[2] The district court reframed the allegation asserted by Milam as the Defendant's "refusal to request the records." ROA.226. However, as explained above Defendant Jimerson elected to utilized SWIFS instead of DPS for pretrial DNA testing and had DPS been used Milam would have been entitled to the request records. ROA.13. SWIFS thus is Defendant Jimerson's agent for purposes of this case and operated as a part of the prosecution team.

First, Texas permits filing applications for writ of habeas corpus. Tex. Code Crim. Proc. art. 11.071. There is no mechanism for obtaining discovery prior to filing an application. Even during a habeas corpus proceeding over which a state district court has jurisdiction, the habeas corpus procedures Texas has do not allow for party-led discovery, ROA.191, and generally place the burden of development of a material factual record on the state district court. *See* Tex. Code Crim. Proc. art. 11.071, § 9(a). Thus, a prisoner in custody such as Milam is never able to access evidence within the control of the State prior to filing a subsequent habeas application and his ability to obtain access to such evidence that may help him prove innocence even after an application is authorized is controlled by the judiciary.

Second, in 2014, a new Texas law—the Michael Morton Act— became effective that requires prosecuting authorities like the Defendant to disclose and afford access to any favorable evidence they have custody or control over, even post-conviction. Tex. Code Crim. Proc. art. 39.14. This law was created specifically to help protect the life and liberty interests Texas created when it allowed prisoners to avoid further incarceration or execution by proving their innocence. However, the

change in the law was made to apply only as to offenses committed on or after the effective date of the law, which was January 1, 2014. The offense for which Milam was wrongly convicted occurred in 2008. Moreover, while the Michael Morton Act imposed a duty on prosecutors to disclose favorable evidence in their possession, even in post-conviction, it did not, at least explicitly, establish any mechanism by which convicted criminal defendants could enforce disclosure.

Third, no Texas law prohibits a prosecuting authority from affording a convicted criminal defendant access to evidence in its custody or control after conviction. Thus, at least where state courts have not permitted discovery or fact development, Texas's post-conviction procedural regime effectively gives prosecuting authorities complete discretion over whether to withhold evidence from or afford access to evidence to convicted criminal defendants.

Milam asserted this regime, in the context of his case and as has been applied to him, has violated due process. ROA.5-18. Milam first attempted to prove he was innocent in a habeas application he filed on January 7, 2019. Although the application was considered on the merits, the state district court did not permit Milam any opportunity to request

discovery or develop a factual record, ROA.191-92, and relief was denied.[3]

Thereafter, Milam filed a motion in the state district court seeking a

---

[3] Milam was afforded no opportunity for fact development with respect to this application. Milam presented a claim available to him under Texas Code of Criminal Procedure Article 11.073 that new scientific evidence demonstrated the bite mark opinion testimony the State presented at his trial was unreliable junk science. The CCA authorized the claim as one that was previously unavailable to him and remanded it to the district court to hear and decide the facts. District Attorney Jimerson filed an answer to that application on May 14, 2019. Twenty days later, the state district court announced in a letter that it would be denying the application. Letter from Judge Gossett to Counsel, 2nd Supp. CR at 115, *Ex parte Milam*, No. WR-79,322-02 (Tex. Crim. App. June 3, 2019). Two days later, District Attorney Jimerson proposed an order for the district court to sign formally finding that there are no "controverted, previously unresolved factual issues material to the legality of applicant's confinement." Order, *id*. at 116–17 (June 5, 2019). In other words, the District Attorney asked the district court not to hear any evidence. On June 5, 2019, the district court signed the District Attorney's proposed order ruling that it would not hold an evidentiary hearing. *Id*. It subsequently verbatim adopted the findings of fact and conclusions of law proposed by the Defendant. Order, *id*. at 253–54 (Oct. 16, 2019).

In the 2019 application, Milam took the position that the DNA evidence in the case had no probative value and was immaterial to his conviction. App. for Writ of Habeas Corpus, 1 CR at 45, *Ex parte Milam*, No. WR-79,322-02 (Tex. Crim. App. Jan. 7, 2019). This is because Milam, his codefendant, Carson, and the victim, AC cohabited together and Milam and Carson were the child's caretakers: one would expect to find their DNA on each other and the presence of DNA does not say anything about when the DNA was deposited or the activity that deposited it there. *Id*. But District Attorney Jimerson proposed, and the district court adopted, findings that Milam could not show his innocence notwithstanding the State's presentation of odontological junk science in part because of the DNA evidence the District Attorney had presented at his trial. *See* State's Proposed Findings of Fact, Conclusions of Law, and Order, 2nd Supp. CR at 223–25, *Ex parte Milam*, No. WR-79,322-02 (Sept. 11, 2019); Order, *id*. at 253–54 (Oct. 16, 2019). Thus, it was the District Attorney who made the DNA evidence material to Milam's ability to show his innocence, and he did so in a post-evidentiary posture of the habeas case that eliminated any opportunity for Milam to develop facts related to that question. In short, District Attorney Jimerson successfully worked to preclude Milam from receiving any process during the proceeding.

court order directing District Attorney Jimerson to disclose the DNA records created at the District Attorney's direction before Milam's trial. ROA.51-58. That motion invoked, inter alia, the Michael Morton Act. The District Attorney opposed the request, including on grounds that the Michael Morton Act did not apply to Milam and that the state district court lacked jurisdiction to hear it. ROA.61-77. The state district court denied the motion without giving any reasons. ROA.88.

After Milam filed the instant lawsuit, Defendant District Attorney Jimerson provided over 4000 pages of DNA records. The disclosure was prompted by an admission from the DNA lab that it had made errors in interpreting the DNA testing before Milam's trial. It therefore conducted a reinterpretation of certain evidence, creating additional records. ROA.171-82. Milam, however, has still never received certain DNA records he knows with absolute certainty exists. Specifically, he has not received the electronic data created as a byproduct of the DNA testing that occurred before his trial—testing the State continues to rely upon. ROA.194-95.

The electronic data has been requested by DNA experts with whom Milam is consulting about his case. The electronic data is important for

Milam to review, because it plays a central role in Short Tandem Repeat (STR) testing and constitutes the test's results in their raw and least manipulated form. ROA.194. In contrast, the printed electropherograms found in the paper records are a result of extensive software editing and modification of the original data by the laboratory analyst using the software. ROA.194. Importantly, the electronic data file contains the critical diagnostic information pertaining to the injection of the sample onto the Genetic Analyzer which is not present in the printed electropherogram. ROA.194. A DNA expert of Milam's cannot thoroughly evaluate the results of an STR test without having access to the test's underlying electronic data. ROA.194.

Review of electronic data often leads to the discovery of important problems or limitations in STR testing, or to alternative theories of the evidence, that would not have been apparent based on a review of just the laboratory's reports, notes and electropherograms. ROA.194. Review of electronic data can also help identify other issues, such as previously unnoticed additional contributors to evidence samples, failures of essential controls, abnormalities in the running of the instruments used

to perform the analyses, and/or the identification of the presence of technical artifacts. ROA.194-95.

Disclosure of the electronic data here is particularly important in this case because a review of the printed electropherograms suggests that the Genetic Analyzer used to test the evidence in this case may have been malfunctioning, resulting in compromised DNA profiles. ROA.195. This type of malfunction is called an injection failure. ROA.195. The "red flag" for an injection failure is when the internal size standard peaks decrease in size from left to right. ROA.195. This is usually accompanied by a widening of the peaks left to right. ROA.195. This red flag appears to be present in the paper electropherograms Milam has been able to review, including for the sample District Attorney Jimerson has asserted "directly implicates" Milam. ROA.195.

Milam has identified serious concerns about SWIFS's reinterpretation of the DNA evidence, including SWIFS's reliance on certain DNA locations with very limited genetic data, and for which it is impossible to reliably determine the number of contributors. ROA.195. Reviewing the electronic data would allow Milam's experts to assess the scientific reliability of SWIFS's conclusion that certain DNA samples can

reliably be interpreted, despite the uncertainty and incompleteness of the data. ROA.195.

Although Milam has taken the position that the DNA evidence has no meaningful probative value in his case, the prosecution and Texas courts have disagreed, relying on the DNA evidence to conclude that Milam cannot prove his innocence. Thus, rebutting the DNA evidence is important to Milam's ability to prove his innocence, and the electronic data is important to rebutting the DNA evidence.

Presently, Milam faces being executed without ever receiving evidence in the prosecution's custody or control that may help him prove his innocence. He asserts the impediments to vindicating his life and liberty interests in demonstrating his innocence that have been created by Texas's post-conviction procedural regime and the Defendant District Attorney violate due process.

Therefore, Milam's complaint met the low Rule 12(b)(6) threshold.

## II. The court below erred by holding that Milam only sought mandamus relief.

Relying on an unpublished federal district court opinion, the district court also held that Milam's complaint should be dismissed because it "sounds in mandamus, which the Court lacks the power to

issue." ROA.239. However, Milam did not request mandamus relief. He specifically requested declaratory and injunctive relief. ROA.17.

Milam's requested injunctive relief was not a disguised request for mandamus, as he explained in district court. ROA.206-07. The district court did not cite any binding authority for the proposition that requests for injunctive relief as a remedy should be transformed into requests for a writ of mandamus when sought against state officials. The proposition flies in the face of clear, longstanding federal law, and it mischaracterizes both the claim and the relief. It directly contradicts *Ex parte Young*, 209 U.S. 123 (1908), and transforms every suit seeking injunctive relief against any state official into a request for a writ of mandamus.

The difference between an injunction and a writ of mandamus lies in what they compel, why they are granted, and the tradition they come from. A writ of mandamus is rooted in common law, although it now exists in statutory rules like the All Writs Act. It enforces an existing, clear legal duty, and it is directed at a government official, agency, or inferior court. A writ of mandamus keeps the machinery of government operating within legal bounds. Mandamus only applies to ministerial acts—those with no discretion involved. *Ballinger v. United States*, 216

U.S. 240, 250 (1910). It cannot dictate how an official should exercise judgment, at least unless it is abusive. *Work v. United States*, 267 U.S. 175, 177 (1925). It can be sought and granted where (1) an official is not complying with a ministerial duty; and (2) there is no adequate remedy at law. *Ex parte Harding*, 219 U.S. 363, 376 (1911).

An injunction, by contrast, is rooted in equity and was developed to prevent irreparable harm where legal remedies like monetary damages were inadequate. A writ of injunction prevents or remedies harm by restraining or compelling an individual's action. Unlike a mandamus, it can be directed at anyone—private individuals, corporations, or government actors. An injunction addresses both conduct and discretionary decisions, as long as the equitable standards are met. Injunctive relief can be granted where a plaintiff has demonstrated (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay*

*Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013).

Nowhere below did Milam assert an entitlement to or ask for mandamus relief. He did not allege that District Attorney Jimerson has a ministerial duty under state law to turn over the DNA records; rather, he asserted that Texas's post-conviction evidence-access regime in the circumstances of his case—which includes but is not limited to District Attorney Jimerson's exercise of discretion to afford or withhold access to evidence—violates due process. Whatever District Attorney Jimerson's state-law ministerial duties are, they were irrelevant to this action. Nor did Milam assert that he has no adequate remedy at law; indeed, he *invoked* the law available to him in this suit. Nor did Milam ask the court to order District Attorney Jimerson to comply with any state law ministerial duty, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

Ultimately, the court below simply denied that it has power to issue an injunction against a state official. This is not the law. The Supreme Court has repeatedly held that the availability of injunctive relief against state officials is "necessary to permit the federal courts to vindicate

federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst State School and Hospital*, 465 U.S. at 105 (quoting *Ex parte Young*, 209 U.S. at 160); *see also Quern v. Jordan*, 440 U.S. 332, 337 (1979); *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974); *Georgia Railroad & Banking Co. v. Redwine*, 342 U.S. 299, 304 (1952). And it has specifically held that prospective injunctive relief against state officials is within a "federal court's remedial power" under 42 U.S.C. § 1983. *Edelman v. Jordan*, 415 U.S. 651, 675 (1974); *see also Hutto v. Finney*, 437 U.S. 678 (1978) (affirming injunctive relief granted against state officials pursuant to 42 U.S.C. § 1983). This Court has itself repeatedly affirmed injunctive relief granted by district courts against state officials. *See, e.g.*, *M.D. ex rel. Stukenberg v. Abbott*, 929 F.3d 272 (5th Cir. 2019) (affirming in part injunctive relief against state executive officials); *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) (affirming in part injunctive relief against state executive officials); *Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir. 1982). The district court's conclusion that it lacks this power is simply without foundation in law.[4]

---

[4] Accepting the district court's rule would essentially require that any order from a federal court directing any state official to do anything is an improper writ of mandamus. This argument would also mean that the writ of habeas corpus—a writ

Even if this Court determines that Milam's requested injunctive relief sounds in mandamus, plainly his declaratory relief cannot, and the district court's reasoning was flawed. *See Powell v. McCormack*, 395 U.S. 486, 498–99 (1969) ("Declaratory relief has been requested . . . . [and] [a] court may grant declaratory relief even though it chooses not to issue an injunction or mandamus.").

## III. The court below erred by rejecting Milam's factual allegations and Milam does not have the requested electronic data.

The district court concluded that it could dismiss Milam's complaint because Milam "alleges no facts to suggest that additional DNA records exist apart from what he has already received." ROA.240. Yet, Milam's complaint was entirely premised on the allegation that he did not possess all DNA records created by the lab from DNA testing before his trial. If Milam possessed all DNA records, he would not have filed a lawsuit demanding to be provided all DNA records.

As discussed above, after the lawsuit was initiated, Defendant provided Milam over 4000 pages of DNA records. Yet, as Milam pointed

---

that directs state officials to release an individual from custody—is a disguised writ of mandamus that federal courts lack power to issue.

out in response to the Defendant's motion to dismiss, these were limited to paper records. ROA.194. The electronic data created when the DNA lab conducted the testing was not provided to him and still has not been. ROA.5, 15, 44, 47, 194-95. These records are definitively known to exist as they are a byproduct of the DNA testing itself. The paper DNA records Milam received during the pendency of this suit are produced in part from the very computer program that produces the electronic data, but the paper records are not the electronic data itself and are not coextensive with it. As discussed, *supra*, the electronic data contains information, reviewable by experts, that the paper records produced so far do not. ROA.194-95.

For this reason, the court below effectively rejected Milam's allegation that he has not been given access to the totality of DNA records. This it cannot do under Rule 12(b)(6). *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); *John Doe v. Hillsboro Independent School Dist.,* 81 F. 3d 1395, 1401 (5th Cir. 1996) (under Rule 12(b)(6), "[a]ll well-pleaded facts

must be accepted as true and viewed in the light most favorable to the plaintiff").

## CONCLUSION

For the foregoing reasons, the Court should vacate the district court's order granting the Defendant's motion to dismiss, reverse the judgment, and remand for further proceedings.

Respectfully Submitted,

JASON D. HAWKINS
Federal Public Defender

*/s/ Jeremy Schepers*
Jeremy Schepers
Supervisor, Capital Habeas Unit

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, Texas 75202
(214) 767-2746
(214) 767-2886 (fax)
jeremy_schepers@fd.org

EMILY FOLLANSBEE
efollansbee@texasdefender.org
JARED TYLER
jptyler@texasdefender.org

TEXAS DEFENDER SERVICE
P.O. Box 82236
Austin, TX 78708
Tel: 512-320-8300
Fax: 512-477-2153

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2025, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, which will send notification of such filing to all counsel in this case at their e-mail addresses on file with the Court.

*/s/ Jeremy Schepers*
Jeremy Schepers


**CERTIFICATE OF COMPLIANCE**

I certify that (1) this Brief was prepared in 14-point Century Schoolbook font using Microsoft Word software, (2) this Brief is 7,955 words, excluding the parts of the Brief exempted by the rules of court, and (3) this Brief has been scanned for viruses and the Brief is virus-free. Counsel further certifies that any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13.

*/s/ Jeremy Schepers*
Jeremy Schepers