Case No. 25-70015

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

BLAINE KEITH MILAM,
*Plaintiff – Appellant*

v.

MICHEAL E. JIMERSON,
*Defendant – Appellee*

On Appeal from the United States District Court for the Eastern District of Texas, Tyler Division, No. 6:25-cv-267

# OPPOSED MOTION FOR STAY OF EXECUTION

JASON D. HAWKINS
Federal Public Defender

Jeremy Schepers
Supervisor, Capital Habeas Unit

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, Texas 75202
(214) 767-2746
(214) 767-2886 (fax)
jeremy_schepers@fd.org

EMILY FOLLANSBEE
efollansbee@texasdefender.org
JARED TYLER
jptyler@texasdefender.org

TEXAS DEFENDER SERVICE
P.O. Box 82236
Austin, TX 78708
Tel: 512-320-8300
Fax: 512-477-2153

**Execution Date: September 25**

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................i

TABLE OF AUTHORITIES.............................................................ii

    I.    Requirements for a stay of execution. ................................. 1

    II.   The balance of equities weighs in favor of staying Milam's execution............................................................ 3

        A.    Milam is likely to succeed on the merits of his argument that the district court incorrectly dismissed his lawsuit under Rule 12(b)(6). .................. 3

        B.    Milam's execution is an irreparable harm. .................. 3

        C.    Harm to other parties is minimized due to the temporary nature of the request, Milam's claim of innocence, and the Defendant's conduct....................... 4

        D.    The public interest lies in ensuring the fair adjudication of these important issues rather than executing Milam on September 25....................... 7

        E.    Milam timely filed his federal suit as injury is ongoing. ................................................................................ 8

PRAYER FOR RELIEF................................................................ 8

CERTIFICATE OF COMPLIANCE..................................................... 10

CERTIFICATE OF CONFERENCE..................................................... 10

CERTIFICATE OF SERVICE............................................................10

# TABLE OF AUTHORITIES

**Page(s)**
**Federal Cases**
*Battaglia v. Stephens*,
    824 F.3d 470 (5th Cir. 2016) ............................................................. 3

*Crutsinger v. Davis*,
    930 F.3d 705 (5th Cir. 2019) ............................................................. 4

*Hill v. McDonough*,
    547 U.S. 573 (2006) ..................................................................... 1, 4

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................ *passim*

*O'Bryan v. Estelle*,
    691 F.2d 706 (5th Cir. 1982) ............................................................. 3

*Reese v. Livingston*,
    453 F.3d 289 (5th Cir. 2006) ............................................................. 2

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ........................................................................ 7

*White v. Collins*,
    959 F.2d 1319 (5th Cir. 1992) ........................................................... 2

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................... 1, 3

Milam asks that this Court stay his September 25, 2025, execution pending consideration and disposition of his appeal of the district court's decision to dismiss his civil rights complaint for failure to state a claim on which relief may be granted. That complaint asserted that Texas's post-conviction procedural regime, including the discretion it affords Defendant-Appellee District Attorney Micheal Jimerson, operated to deprive him of due process by withholding from him access to evidence in the State's possession that he seeks to help prove his innocence in multiple state-created channels. The court below dismissed Milam's complaint under Federal Rule of Civil Procedure 12(b)(6). ROA.226-41. The balance of equities weighs in favor of a stay of execution, and this Court should stay Milam's execution and remand his case for further proceedings on this important constitutional question.[1]

I.      **Requirements for a stay of execution.**

A stay of execution in this context "is an equitable remedy" and "is not available as a matter of right." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). The party seeking the stay "bears the burden of showing that the

---

[1] Milam has attached the documents required under Fifth Circuit Rule 8.1. He did not seek a stay of execution in district court, so those documents are not included in his attachment.

circumstances can justify an exercise of [judicial] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009).

The standards for determining whether a stay should be granted are well-settled and are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "[T]he movant in a capital case need not always show a probability of success on the merits, [although] he must present a substantial case on the merits when a serious legal question is involved and show that the balance of equities [*i.e.*, the other three factors] weighs heavily in favor of granting the stay." *White v. Collins*, 959 F.2d 1319, 1322 (5th Cir. 1992) (internal quotations omitted). Courts also consider the timeliness of a request to stay an execution. *Reese v. Livingston*, 453 F.3d 289, 290–91 (5th Cir. 2006).

## II. The balance of equities weighs in favor of staying Milam's execution.

### A. Milam is likely to succeed on the merits of his argument that the district court incorrectly dismissed his lawsuit under Rule 12(b)(6).

Milam meets the first *Nken* factor, because he is likely to succeed on his argument that the district court erroneously dismissed his civil rights complaint under Rule 12(b)(6). *See* 556 U.S. at 434. He has thoroughly explained why the district court erred in dismissing his complaint in his Appellant's Brief that he is simultaneously filing, so rather than repeat those arguments here, Milam incorporates that filing by this specific reference. Milam's likely success on appeal is "the most critical" of the factors in determining whether to issue a stay. *See id.*

### B. Milam's execution is an irreparable harm.

This Court can quickly resolve the second *Nken* factor, whether irreparable harm will occur. *See Nken*, 556 U.S. at 434. Milam's execution is plainly an irreparable injury. This factor "weighs heavily in the movant's favor" based on the "irreversible nature of the death penalty." *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982). This is particularly true when the "claim has some merit." *Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016). Here, Milam has shown a likelihood of success

3

on the merits and the irreparable harm that would ensue by not staying his execution strongly supports his request.

C. **Harm to other parties is minimized due to the temporary nature of the request, Milam's claim of innocence, and the Defendant's conduct.**

The third *Nken* factor is whether "issuance of the stay will substantially injure the other parties interested in the proceeding." 556 U.S. at 434. Milam recognizes that "the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). And that the State has a "strong interest in enforcing its criminal judgments without undue interference from the federal courts," *Crutsinger v. Davis*, 930 F.3d 705, 709 (5th Cir. 2019). However, any injury to other parties by staying Milam's execution is minimized by several factors.

First, any harm to other parties is mitigated by the temporary nature of the requested relief. The requested stay does not invalidate Milam's conviction or sentence but instead is only a temporary measure to permit him an opportunity to litigate this important and potentially meritorious constitutional claim.

4

Second, the nature of the harm to other parties should be placed in the context of Milam's upcoming execution. Here, the State is proceeding with his execution despite significant questions regarding Milam's guilt. At trial, the State relied on bitemark opinion testimony as establishing Milam's guilt. But, in March 2023, the National Institute of Standards and Technology ("NIST") published a new report, *Bite Mark Analysis: A NIST Scientific Foundation Review*, that established a scientific consensus that opinions purporting to exclude or not exclude a particular individual's dentitions as the source of injuries on skin is not scientifically supportable. Moreover, at trial, the State emphasized DNA testimony by SWIFS that Milam's DNA was on certain injuries on A.C.'s body to corroborate the now-debunked bitemark opinion evidence. SWIFS, however, reinterpreted that DNA evidence in August 2025 and now concludes that Milam is not included as a possible contributor to those DNA samples.[2]

---

[2] SWIFS still ties Milam to one of those samples (Item 20I). Its interpretation of sample 20I, however, does not comport with current scientific understanding of DNA mixture interpretation. Moreover, in its August 2025 report, SWIFS rejects any activity-level conclusions based on DNA evidence. In other words, the presence of Milam's DNA on a swab from A.C.'s skin does not support any conclusion as to how or when his DNA was transferred to that surface.

5

Third, in August 2025, the State turned over certain DNA files Milam had requested in 2018, 2024, and 2025. ROA.10-14. From those records, Milam learned that SWIFS notified the State in March 2016 of potential errors regarding DNA mixture interpretation in the DNA evidence relied on by the State to obtain his capital murder conviction. SWIFS also requested that the State inform Milam's counsel of this March 2016 notice.[3] The State, however, did not notify Milam's counsel and also did not request reinterpretation of those results. Instead, it continued to rely on SWIFS's trial testimony that the DNA evidence tied Milam to certain injuries on A.C.'s body despite being put on notice that such evidence should be reinterpreted based on changes in the scientific understanding of DNA mixture interpretation.

Now, just weeks before Milam's execution, he still has not received critical information that the Defendant continues to rely on to uphold his death sentence. Specifically, the Defendant still refuses to provide Milam with the electronic data that exists from the DNA testing done at the

---

[3] The State did provide notice to Milam's prior counsel in 2015 of a separate issue regarding potential errors in the way that some of the DNA statistics were reported. This separate issue, unlike the updated mixture interpretation methodology relevant here, had no impact on an individual's inclusion or exclusion from a sample and did not pertain specifically to his case.

6

time of trial. ROA.5, 15, 44, 47, 194-95. Milam asserted below that reviewing the data can further demonstrate the unreliability of the State's DNA evidence at trial and assist him in proving his innocence.

### D. The public interest lies in ensuring the fair adjudication of these important issues rather than executing Milam on September 25.

When deciding whether to issue a stay, courts must be mindful of the public consequences. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). This and the third *Nken* factor regarding harm to other parties "merge when the Government is the opposing party," *Nken*, 556 U.S. at 435, so Milam largely refers this Court to the prior section. While Milam recognizes that the public undoubtedly has an interest in the enforcement of criminal sentences, the requested stay will not prohibit the enforcement of Milam's sentence. Instead, it will temporarily pause it to provide the federal courts with the opportunity to grapple with the important issues raised here.

The public has an interest in ensuring that petitioners with claims of actual innocence can avail themselves of the Texas post-conviction framework to litigate their innocence and thus redress gross miscarriages of justice. The public's confidence in the integrity of the

criminal legal system will be undermined if the courts allow finality to trump Milam's potentially meritorious claims of innocence.

### E. Milam timely filed his federal suit as injury is ongoing.

Milam timely filed the instant suit in the court below. Filing a civil rights complaint requires an actual injury. In this context, the injury is ongoing because the Defendant has not turned over the complete DNA records in Milam's case, including the electronic data. Milam has repeatedly attempted to gain access to a complete set of DNA records for years. ROA.10-14. Had the Defendant provided these records at any of these points, or during the instant litigation in the court below, no stay of execution would be necessary. Now one is needed to ensure a remedy for this constitutional violation can be provided.

### PRAYER FOR RELIEF

Milam asks that this Court stay his September 25, 2025, execution.

Respectfully submitted,

DATE: September 10, 2025

JASON D. HAWKINS
Federal Public Defender

*/s/ Jeremy Schepers*
Jeremy Schepers
Supervisor, Capital Habeas Unit
Texas Bar No. 24084578

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
jeremy_schepers@fd.org

EMILY FOLLANSBEE
Texas Bar No. 24124283
efollansbee@texasdefender.org
JARED TYLER
Texas Bar No. 24042073
jptyler@texasdefender.org
TEXAS DEFENDER SERVICE
P.O. Box 82236
Austin, TX 78708
Tel: 512-320-8300
Fax: 512-477-2153

## CERTIFICATE OF COMPLIANCE

I certify that (1) this Motion was prepared in 14-point Century Schoolbook font using Microsoft Word software, (2) this Motion is 1,609 words, excluding the parts exempted by the rules of court, and (3) this Motion has been scanned for viruses and is virus-free. Counsel further certifies that any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13.

*/s/ Jeremy Schepers*
Jeremy Schepers

## CERTIFICATE OF CONFERENCE

I certify that I contacted counsel for the Defendant, Tomee Heining, regarding this Motion. The Defendant is opposed to the relief requested.

*/s/ Jeremy Schepers*
Jeremy Schepers

## CERTIFICATE OF SERVICE

I certify that on September 10, 2025, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, which will send notification of such filing to all counsel in this case at their e-mail addresses on file with the Court.

*/s/ Jeremy Schepers*
Jeremy Schepers
