Case No. 25-70015

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

BLAINE KEITH MILAM,
*Plaintiff – Appellant*

V.

MICHEAL E. JIMERSON,
*Defendant – Appellee*

consolidated with

## No. 25-40579

IN RE: BLAINE KEITH MILAM,

Movant

On Appeal from the United States District Court for the Eastern District
of Texas, Tyler Division, No. 6:25-cv-267

# APPELLANT'S REPLY BRIEF

Jeremy Schepers
Supervisor, Capital Habeas Unit

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, Texas 75202
(214) 767-2746
(214) 767-2886 (fax)
jeremy_schepers@fd.org

EMILY FOLLANSBEE
efollansbee@texasdefender.org
JARED TYLER
jptyler@texasdefender.org

TEXAS DEFENDER SERVICE
P.O. Box 82236
Austin, TX 78708
Tel: 512-320-8300
Fax: 512-477-2153

**Execution date: September 25, 2025**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ..................................................................... ii

I.    Milam States a Claim Under *Osborne* ................................... 1

II.   Milam is Actually Innocent ..................................................... 7

III.  Milam Seek Prospective Injunctive Relief ............................ 9

IV.   Milam's Suit is Not Time-Barred ......................................... 12

V.    The *Rooker-Feldman* Doctrine Has No Application to
      this Case. ............................................................................... 15

CONCLUSION ...................................................................................... 20

CERTIFICATE OF SERVICE .............................................................. 21

CERTIFICATE OF COMPLIANCE ...................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................ ............................................2

*Brady v. Maryland,*
   373 U.S. 83 (1963).............................. ....................................... 12

*Dist. Attorney's Off. for Third Jud. Dist. v. Osborne,*
   557 U.S. 52 (2009)......................................... .......................................1, 7

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
   544 U.S. 280 (2005)......................................... ........................................ 16

*Gutierrez v. Saenz,*
   606 U.S. ___, 145 S. Ct. 2258 (2025)......... ........................................... 17

*Johnson v. Collier,*
   137 F.4th 376 (5th Cir. 2025) ................ ............................................... 11

*Johnson v. De Grandy,*
   512 U.S. 997 (1994)......................................... ................................... 16, 18

*Moye v. Clerk, DeKalb Cty. Superior Court,*
   474 F.2d 1275 (5th Cir. 1973) ................ ......................................... 11

*Napue v. Illinois,*
   360 U.S. 264 (1959)......................................... ......................................... 12

*Reed v. Goertz,*
   598 U.S. 230 (2023)......................................... ................................... 13, 17

*Skinner v. Switzer,*
   562 U.S. 521 (2011)......................................... ................................... 17, 19

# TABLE OF AUTHORITIES

(continued)

**Page**

**State Cases**

*Milam v. State,*
No. AP-76,379 (Tex. Crim. App. May 17, 2010) ................................. 15

*Ex parte Reed,*
271 S.W.3d 698 (Tex. Crim. App. 2008) ... ..................................... 4, 13

*In re Texas Dep't of Crim. Just.,*
710 S.W.3d 731 (Tex. Crim. App. 2025) ... ........................................ 5

**Federal Statutes**

28 U.S.C. § 2201 .......................................... ................................. 10

42 U.S.C. § 1983 ........................................... ................................. *passim*

**State Statutes**

Tex. Gov't Code § 552.108 ......................... .......................................... 14

Tex. Penal Code § 7.02 ............................... .......................................... 9

Tex. Penal Code § 19.02 ............................. .......................................... 8

In his response brief, Defendant-Appellee District Attorney Micheal Jimerson argues that the district court properly dismissed Appellant Blaine Milam's complaint for failure to state a claim for which relief can be granted and proffers several alternative grounds for affirming the district court's judgment. For the following reasons, these arguments should all be rejected.

## I.    Milam States a Claim Under *Osborne*[1]

District Attorney Jimerson argues that Milam's allegations fail to state a claim for relief under the Due Process Clause. He does not, however, endorse any of the district court's stated reasons for doing so. Resp. Br. at 13 ("Milam claims that the district court misconstrued his arguments. Regardless . . . this Court can affirm the district court's dismissal of his § 1983 complaint on any bases supported by the record."). Instead, he makes several alternative arguments as to why this Court should affirm the district court's dismissal.

First, District Attorney Jimerson argues that Milam "failed to avail himself" of Texas's "procedures for court-ordered discovery." Resp. Br. at

---

[1] *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52 (2009).

1

20. In fact, Milam alleged he has invoked Texas's post-conviction procedures and exhausted available avenues for obtaining the evidence in the District Attorney's custody and control that he needs to make his actual innocence showing. ROA.5-18. These allegations must be taken as true and construed in Milam's favor at this stage. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

District Attorney Jimerson contends that Milam "could have raised an actual innocence claim based on DNA evidence in one of his previous subsequent state habeas applications and sought discovery." Resp. Br. at 20. Milam alleged, however, that in prior litigation he had taken the position that the DNA evidence had *no* probative value as to his guilt.[2] ROA.8, 192. It was not until the state court adjudicated that question against him—in 2020—that Milam's life and liberty interests in proving his innocence necessitated rebutting the DNA evidence.

In that prior proceeding, it was District Attorney Jimerson who induced the state court to adjudicate the relevance of the DNA evidence against Milam and who, at the same time, prevented Milam from

---

[2] The only reasonable inference that could be drawn from the totality of the DNA evidence was that Milam, Carson, and the deceased cohabited together.

invoking any discovery procedures. ROA.11. District Attorney Jimerson proposed to the state trial court—and the state trial court signed—an order denying Milam a hearing, cutting off his access to any court-ordered discovery. ROA.11. District Attorney Jimerson thereafter proposed to the state trial court that it make a legal conclusion that certain DNA evidence "directly implicated" Milam in the murder.[3] ROA.46. Milam denies the soundness of that legal conclusion, but it was adopted by the state's highest court and so he now must rebut or overcome it to prove his innocence.

Milam thereafter invoked all procedures potentially available to him to obtain the DNA records that would assist him in demonstrating the unreliability of the DNA evidence used against him—public information act requests and a motion in the trial court. ROA.12-14. All efforts failed, and District Attorney Jimerson has continued to exercise his own discretion to decline to afford Milam access to the DNA records.

---

[3] Notwithstanding that District Attorney Jimerson proposed this finding to the state court, he has taken the significantly inconsistent position in this litigation that the DNA evidence had only "marginal value." ROA.114.

Pointing to Milam's most recent state court filing raising an actual innocence claim,[4] the District Attorney asserts that Milam "should not be permitted to complain about a state process that he had yet to invoke at the inception of his current lawsuit." Resp. Br. at 21. Left unstated is that the state court requires that Milam make a prima facie showing of his innocence *at the time of filing. See, e.g., Ex parte Reed*, 271 S.W.3d 698, 733 (Tex. Crim. App. 2008) ("To *obtain review* of the merits of a procedurally barred claim, an applicant must make a threshold, prima facie showing of innocence by a preponderance of the evidence." (emphasis added)); *id.* at 746 (concluding, at the threshold review stage, that all the "evidence" presented by the applicant was insufficient to establish "a prima facie showing that, in light of all of the evidence before us, no reasonable juror would have convicted him"). In other words, while the state court will not require him to prove his innocence at the time of filing, it does require him to collect and present evidence in support of allegations that are sufficient to demonstrate a prima facie case of his innocence when he filed his subsequent application. Because of the

---

[4] This filing occurred on September 2, 2025, after the district court dismissed the complaint, and is not part of the record below.

District Attorney's actions in prior post-conviction proceedings inducing the state court to conclude that certain DNA evidence "directly implicates" Milam in murder, and his refusal to turn over the records before Milam filed that application, Milam must incorporate rebuttal of DNA evidence into any application attempting to demonstrate his innocence.

Relying on *In re Texas Dep't of Crim. Just.*, 710 S.W.3d 731, 737–38 (Tex. Crim. App. 2025), District Attorney Jimerson contends that Milam has no need of the DNA records before filing a subsequent state habeas application because he can simply file an application and make good faith allegations about what the DNA records would show. Resp. Br. at 18-19. To the extent such a process is available, it is not, however, a substitute for due process. Milam will still be forced to meet the strict requirements for filing a subsequent habeas application despite District Attorney Jimerson's refusal to provide the relevant records and interference with his ability to utilize the state-created liberty interest. Furthermore, Milam seeks DNA records specifically for expert review. ROA.194-95. Neither Milam's counsel nor an expert can simply invent an opinion by envisioning data they have not seen.

Second, District Attorney Jimerson asserts Milam "offers no precedent holding that the Texas postconviction discovery scheme is fundamentally inadequate because it does not force district attorneys to agree to unbounded postconviction discovery." Resp. Br. at 21. Milam does not need to offer any precedent for this proposition, as he does not assert it: nowhere has Milam alleged that Texas's failure to require "unbounded post-conviction discovery" violates due process. Milam has alleged that Texas's post-conviction evidence-access regime has failed to adequately protect his life and liberty interests *under the circumstances of his case*, i.e., that process due to him *in light of the nature of his interest and under the totality of the circumstances* has not been afforded. *See, e.g.*, ROA.190. District Attorney Jimerson's argument is a red herring.

Third, District Attorney Jimerson argues that, if Texas's postconviction procedures are unconstitutional, then so are the federal government's. Milam, however, is not challenging the facial validity of Texas's post-conviction evidence-access regime. He is challenging it within the context of how it has been applied to him. It is certainly possible some other defendant convicted of a federal criminal offense may successfully assert the federal post-conviction evidence-access regime has

been applied to them in a manner that has deprived them of due process. But that is another case, not this one. Because nothing in Milam's allegations imply anything about the federal post-conviction evidence-access regime, the argument is another red herring.

Fourth, District Attorney Jimerson contends that "Texas's procedures are similar to the ones upheld in *Osborne*." Resp. Br. at 23. That may or may not be so. But it is likewise irrelevant because Milam is not challenging the facial adequacy of Texas's post-conviction evidence-access regime. As explained in his opening brief, the difference between Milam's case and the *Osborne* case is that the convicted defendant in *Osborne* had not invoked any of the state's post-conviction procedures when he filed his federal lawsuit. Milam has. *See* Opening Br. at 5–11.

## II.    Milam is Actually Innocent

District Attorney Jimerson seeks to have this Court adjudicate Milam's actual innocence claim while continuing to withhold the DNA records from him, after both asserting in this Court that Milam does not have a "plausible" claim of innocence based on the DNA evidence and in prior state court proceedings that the DNA evidence supports Milam's conviction. Resp. Br. at 25. It was the District Attorney—not Milam—

who induced the state trial court in a prior post-conviction proceeding to hold that certain DNA evidence "directly implicates" Milam in murder. As explained, *supra*, Milam initially took the position that the DNA evidence was not relevant to his guilt, as it only tended to prove that he cohabited with Carson and the deceased and was one of the deceased's caretakers, propositions that are not disputed. It was the District Attorney who rejected Milam's position about the DNA evidence and induced the state court to make a legal conclusion that the DNA evidence "directly implicates" Milam in the murder. District Attorney Jimerson is therefore the actor who has placed Milam in the position of needing to rebut the DNA evidence in order to prove his innocence.

District Attorney Jimerson insists that "it is beyond question that Milam and Jesseca are responsible for [A.C.]'s brutal murder." Resp. Br. at 25. The District Attorney then lays out an argument proving, at most, only that Milam was present in the trailer when the infant was murdered, not that he caused her death, *see* Tex. Penal Code §19.02(b), nor that he solicited, encouraged, directed, aided, or attempted to aid

Carson in causing her death, *see* Tex. Penal Code § 7.02(a)(2). [5] Regardless of the District Attorney's current position as to the relevance of the DNA evidence, he has already induced the state trial courts to make a legal conclusion that it "directly implicates" Milam in murder and has thereby conceded its salience to Milam's ability to prove his innocence. And Milam has presented significant new evidence that he is innocent, more than enough to counter the Defendant's argument at this stage. Ultimately, the strength of Milam's actual innocence claim is not a basis on which to dismiss a complaint asserting a due process violation for withholding evidence in post-conviction, especially not where, as here, it was the District Attorney himself who connected that evidence to Milam's guilt or innocence.

### III.   Milam Seek Prospective Injunctive Relief

District Attorney Jimerson argues that the district court's dismissal should be affirmed because Milam's complaint "equates" to an impermissible mandamus. Resp. Br. at 32. In one breath, District

---

[5] The District Attorney did not ask for a conspiracy instruction at the trial. The only way the jury could have convicted Milam per its instructions is by concluding that he either caused the child's death or that he solicited, encouraged, directed, aided, or attempted to aid Carson in causing her death.

Attorney Jimerson denies, as he must, that he is asserting that federal courts lack power to issue injunctive relief against state officials, Resp. Br. at 33, yet in the next he insists that a federal court cannot "compel" a "state actor" to perform an act like "acquire DNA evidence" and "transmit it to [him]," *id*. at 34. In other words, the Director is both denying and asserting that federal courts lack the power to issue injunctions against state officials.

Below, Milam only sought an adequate equitable remedy for an asserted violation of due process. ROA.17. Nowhere did Milam assert an entitlement to mandamus relief. He did not allege that District Attorney Jimerson has a ministerial duty under state law to turn over the DNA records; rather, he asserted that Texas's post-conviction evidence-access regime in the circumstances of his case—which includes but is not limited to District Attorney Jimerson's exercise of discretion to afford or withhold access to evidence—violates due process. ROA.15-17. Nor did Milam assert that he has no adequate remedy at law; indeed, he *invoked* the law available to him in this suit: 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202.

None of the District Attorney's cited authorities—only two of which are precedential—supports his position that a federal court may not issue injunctive relief against a state official if it can be "equated" to mandamus relief. One precedential case, *Moye v. Clerk, DeKalb Cty. Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973), is cited for the proposition that federal courts "lack the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought," Resp. Br. at 33, a proposition Milam does not dispute and which has no relevance to a case in which mandamus relief was not sought.

The second precedential case, *Johnson v. Collier*, 137 F.4th 376, 382 (5th Cir. 2025), is cited for the proposition that "the Court [should] reject Milam's attempt to micro-manage the district attorney." Resp. Br. at 34. But *Johnson* has nothing to do with whether a court has the power to issue injunctive relief against a state official and merely stands for the proposition that federal courts "do not review whether state courts have followed state procedural rules unless their failure to do so presents a federal constitutional issue." 137 F.4th at 382.

Enforcement of due process by ordering a district attorney to afford to a convicted defendant access to evidence of innocence in his or her custody or control is no more "micro-manag[ing] the district attorney" than is *Brady v. Maryland*'s requirement that a district attorney disclose favorable information in the prosecution's possession to a defendant before trial.[6] Nor is it any more "micro-managing" than *Napue v. Illinois*'s requirement that a district attorney correct false testimony it elicits from a witness during a trial.[7] The Due Process Clause by its very nature deals in particulars of specific situations. That District Attorney Jimerson refuses to afford Milam access to evidence it has held over his head in post-conviction as continuing proof of his guilt is not a legal basis for describing routine injunctive relief as a disguised mandamus.

## IV.   Milam's Suit is Not Time-Barred

The district court below did not hold that Milam's civil action was barred by the statute of limitations. District Attorney Jimerson nevertheless argues that its dismissal should be affirmed on this ground. This cannot be so, because the violation complained about is ongoing, not

---

[6] 373 U.S. 83 (1963).

[7] 360 U.S. 264 (1959).

historical in nature. *See Reed v. Goertz*, 598 U.S. 230, 236 (2023) (a procedural due process claim "is not complete when the deprivation occurs" but rather is complete "only when 'the State fails to provide due process.'") (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). The relief Milam seeks is prospective in nature, not remedial.

Alternatively, if a limitations period has begun running, it would only have begun, at the latest, "when state litigation ends." *Reed*, 598 U.S. at 237. In this case, that would have been by the district court's denial of his discovery motion seeking access to the DNA records on May 21, 2025, well within the two-year limitations period.

District Attorney Jimerson tries to distinguish *Reed* on the ground that *Reed* invoked "an established state procedure," whereas Milam "ignored available State procedures" by "opt[ing] not to seek discovery through a subsequent state habeas application and instead s[eeking] jurisdictionally impermissible discovery in the trial court." Resp. Br. at 37. The established nature of state procedures, or not, has no bearing on when the limitations period begins to run. Milam has been seeking access

to the DNA records since 2018, ROA.10, [8] before District Attorney Jimerson first made them material to his ability to prove his innocence in 2020. ROA.10. After unsuccessfully seeking the records from both SWIFS and District Attorney Jimerson—who at all times has had the discretion to afford access to them—Milam sought to obtain them through a motion in the state trial court. ROA.14. That motion invoked, inter alia, a state law that requires District Attorneys to turn over favorable evidence even after conviction. ROA.51-59. District Attorney Jimerson opposed the motion while denying the applicability of that state law to Milam's case, ROA.61-77, and the state trial court denied the motion without providing any reasons, ROA.88. If a limitation period has begun to run, this is when it started.

Finally, District Attorney Jimerson repeatedly intones that Milam should have "been aware of the inculpatory value of the DNA evidence since his trial over fifteen years ago." Resp. Br. at 37. But, even at trial Milam denied the DNA evidence had any probative value for his guilt.

---

[8] Milam later requested the DNA records directly from SWIFS. However, SWIFS treated his request as a Public Information Act request even though it was not made as such and obtained a ruling from the Office of the Attorney General that these records are exempt from public disclosure pursuant to § 552.108 of the Texas Government Code. ROA.13.

*See* 48 RR 60, *Milam v. State*, No. AP-76,379 (Tex. Crim. App. May 17, 2010) ("The bite mark DNA evidence, what does it prove? It proves that they all lived together, just like Sergeant Helton said. You know? I guess those are results that we're going to expect to see when he starts out from the get-go saying it didn't matter about wearing all these gloves and everything. They all lived together. Their DNA was going to be on one another. Well, that's a self-fulfilling prophecy, don't you think? That's what I think. It shows they all lived together."). It was not until Milam challenged the State's subsequently discredited bitemark opinion testimony in a post-conviction proceeding that a court, at the District Attorney's suggestion, adjudicated the DNA evidence to be evidence that implicated him.

## V.     The *Rooker-Feldman* Doctrine Has No Application to this Case.

The district court below did not hold that the *Rooker-Feldman* doctrine strips it of subject matter jurisdiction over Milam's complaint. District Attorney Jimerson nevertheless argues that its dismissal should be affirmed on this ground. Resp. Br. at 37-39. There is no basis for doing so.

The Supreme Court has repeatedly emphasized the doctrine's narrowness: it is "confined" to a small class of cases in which a state-court loser complains of an injury caused by a state-court judgment and asks the federal district court to "overturn" that judgment as a means of affording relief. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 291–94 (2005); *see also Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994) (describing the doctrine as prohibiting review of an action "seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights" (emphasis added)). Milam did not allege any injury caused by the trial court's order denying his motion for discovery. Nor did the relief requested—a federal declaration and (as appropriate) prospective orders directed to the District Attorney—seek revision or annulment of any state court order.

*Rooker–Feldman* applies only when (1) the plaintiff complains of injuries caused by a state-court judgment rendered before the federal suit began, and (2) the federal action invites review and rejection of that judgment. 544 U.S. at 284, 291–92. Both elements are missing. The

16

alleged due-process injury is asserted to be caused by the totality of Texas's post-conviction evidence-access regime as it has operated in this case to thwart vindication of Milam's life and liberty interests in proving his innocence. And the requested relief neither reviews nor reverses the state trial court's denial of Milam's motion that it order Jimerson to turn it over.

In *Skinner v. Switzer*, 562 U.S. 521 (2011), the Supreme Court held that a § 1983 claim seeking access to biological evidence in a district attorney's custody and control "encounters no *Rooker–Feldman* shoal," even though Texas courts had previously denied relief under a procedural mechanism specifically established to permit convicted defendants access to such evidence. *Id.* at 531–33. The Court has since reiterated that posture. *Reed v. Goertz*, 598 U.S. 230, 235 (2023). And, most recently in *Gutierrez v. Saenz*, 606 U.S. ___, 145 S. Ct. 2258 (2025), the Court again proceeded on the premise that federal jurisdiction exists to adjudicate a due-process challenge to a state's post-conviction evidence-access regime, notwithstanding prior state-court decisions in those cases saying a convicted defendant was not entitled to access under state law. *See* 144 S. Ct. 2265–69. In *Gutierrez*—having twice already rejected the

argument in this context—the Court simply ignored the district attorney's protest that *Rooker-Feldman* stripped the federal court of subject-matter jurisdiction. These decisions control: a federal court may entertain a § 1983 claim that targets a State's post-conviction evidence-access regime even after the petitioner unsuccessfully invoked state procedures to try to obtain the evidence.

District Attorney Jimerson argues that Milam "lost" a discovery effort in state court and now seeks what is "in substance" an appeal. Resp. Br. at 38. But the appropriateness of the state trial court's order is entirely irrelevant to Milam's action; Milam did not allege it has caused him any injury. He alleged his injury is caused by Texas's post-conviction evidence-access regime as a whole, including its bestowal of unfettered discretion in District Attorney Jimerson to withhold the evidence from him. Whether Texas's post-conviction evidence-access procedures under the circumstances of this case are adequate to protect Milam's life and liberty interests in proving his innocence was never raised nor litigated by Milam in any state court. Because of that, Milam cannot possibly be "appealing" any state court order. *See Johnson*, 512 U.S. at 1006 (denying

applicability of *Rooker-Feldman*, in part, because the party had not "directly attacked" the state court judgment).

The Supreme Court has already and repeatedly said that a § 1983 claim targeting a state's regime that denies access to evidence which may be relevant to proving innocence after state-court denials "encounters no *Rooker–Feldman* shoal." *Skinner*, 562 U.S. at 531. District Attorney Jimerson's *Rooker-Feldman* argument misidentifies the injury, misstates the relief, and overreads a narrow jurisdictional doctrine. It should be rejected.[9]

---

[9] Milam will not be filing a separate reply in support of his Motion for Stay of Execution, as that motion adequately addresses the legal standards and the points raised by the Response. District Attorney Jimerson claims that Milam's Motion violates this Court's Rule 8.1.2, which states that "[i]f the appellant raises an issue that was not raised before the district court or has not been exhausted in state court, the applicant must give the reasons why prior action was not taken and why a stay should be granted." However, Milam raised all substantive issues regarding his complaint in the district court, and this Court plainly has independent authority to enter a stay of execution where justified.

To the extent this Court requires additional information on this point, no stay was sought in the district court because none was needed. Milam filed the instant case with ample time for the district court to rule and order the requested records to be turned over, which would have provide Milam time to utilize those records prior to his execution date. Indeed, the district court ruled and entered final judgment nearly a month before Milam's execution date. ROA.242. A stay is only necessary now because of District Attorney Jimerson's refusal to provide the records, and even if this Court ordered injunctive relief now, Milam does not have enough time before his execution date to use that data to pursue available state post-conviction remedies.

## CONCLUSION

For the foregoing reasons, the Court should vacate the district court's order granting the Defendant's motion to dismiss, reverse the judgment, and remand for further proceedings.

Respectfully Submitted,

JASON D. HAWKINS
Federal Public Defender

*/s/ Jeremy Schepers*
Jeremy Schepers
Supervisor, Capital Habeas Unit

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, Texas 75202
(214) 767-2746
(214) 767-2886 (fax)
jeremy_schepers@fd.org

EMILY FOLLANSBEE
efollansbee@texasdefender.org
JARED TYLER
jptyler@texasdefender.org

TEXAS DEFENDER SERVICE
P.O. Box 82236
Austin, TX 78708
Tel: 512-320-8300
Fax: 512-477-2153

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2025, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, which will send notification of such filing to all counsel in this case at their e-mail addresses on file with the Court.

*/s/ Jeremy Schepers*
Jeremy Schepers

**CERTIFICATE OF COMPLIANCE**

I certify that (1) this Brief was prepared in 14-point Century Schoolbook font using Microsoft Word software, (2) this Brief is 3,959 words, excluding the parts of the Brief exempted by the rules of court, and (3) this Brief has been scanned for viruses and the Brief is virus-free. Counsel further certifies that any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13.

*/s/ Jeremy Schepers*
Jeremy Schepers