# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 19, 2025

Lyle W. Cayce
Clerk

No. 25-70015

BLAINE KEITH MILAM,

*Petitioner—Appellant,*

*versus*

MICHAEL E. JIMERSON,

*Respondent—Appellee.*

CONSOLIDATED WITH

No. 25-40579

IN RE: BLAINE KEITH MILAM,

*Movant.*

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:25-CV-267

Before ELROD, *Chief Judge,* and GRAVES and HIGGINSON, *Circuit Judges.*

James E. Graves, Jr., *Circuit Judge*:

Blaine Keith Milam was convicted of capital murder and sentenced to death in Texas in 2010. After multiple habeas proceedings and appeals, Milam filed a lawsuit under 42 U.S.C. § 1983 arguing that Texas' postconviction relief procedures were unconstitutional. The district court dismissed his complaint for failure to state a claim. Milam appealed. He also moved for a stay of execution, authorization to file a successive habeas petition, and leave to file a motion in excess of the word limit. For the reasons below, we AFFIRM the district court's dismissal of his § 1983 lawsuit, DENY his motions for a stay of execution and authorization to file a successive habeas petition, and GRANT leave to file a motion in excess of the word limit.

## I.

Blaine Keith Milam was convicted of murdering his fiancée's thirteen-month-old daughter and was sentenced to death. At trial, the State relied on DNA evidence, including testimony from employees of the Southwestern Institute of Forensic Sciences ("SWIFS"). This testimony indicated that "several items of [Milam]'s clothing tested presumptively positive for trace amounts of blood that were mostly not visible to the human eye," that "the DNA profile from the decedent, who was a child in [Milam]'s care, either 'matched' or was consistent with DNA samples taken from [Milam]'s shirt and jeans," and that Milam "was included as a possible contributor to DNA from swabs of abrasions on the decedent's body." On direct appeal, the Texas Court of Criminal Appeals ("CCA") affirmed his conviction. *Milam v. State*, No. AP–76,379, 2012 WL 1868458, at *21 (Tex. Crim. App. May 23, 2012).

Milam then filed a postconviction habeas petition, which the CCA denied. *Ex parte Milam*, No. WR–79,322–01, 2013 WL 4856200 (Tex. Crim. App. Sept. 11, 2013) (per curiam). Milam then filed a federal habeas petition which was similarly denied. *Milam v. Dir., TDCJ-CID*, No. 4:13-CV-545,

25-70015
c/w No. 25-40579

2017 WL 3537272 (E.D. Tex. Aug. 16, 2017). This court then denied Milam's request for a certificate of appealability. *Milam v. Davis*, 733 F. App'x 781 (5th Cir. 2018) (per curiam), *cert. denied*, 586 U.S. 924 (2018).

Eight days before his first execution date, he filed another habeas application. The CCA granted a stay of execution and remanded two claims for the trial court to consider. This petition was ultimately denied. *Ex parte Milam*, No. WR-79,322-02, 2020 WL 3635921 (Tex. Crim. App. July 1, 2020) (per curiam), *cert. denied sub nom.*, *Milam v. Texas*, 141 S. Ct. 1402 (2021). Subsequent federal habeas petitions were similarly unsuccessful. *See In re Milam*, 838 F. App'x 796, 798–800 (5th Cir. 2020) (per curiam); *In re Milam*, 832 F. App'x 918 (5th Cir. 2021) (per curiam), *cert. denied sub nom.*, *Milam v. Lumpkin*, 142 S. Ct. 172 (2021). In 2021, the CCA once more granted a stay of execution and remanded to the trial court for further habeas proceedings. The CCA again ultimately denied this petition. *Ex parte Milam*, No. 79,322-04, 2024 WL 3595749, at *1 (Tex. Crim. App. July 31, 2024) (per curiam), *cert. denied sub nom.*, *Milam v. Texas*, 145 S. Ct. 1334 (2025).

On September 9, 2024, Milam's counsel requested that SWIFS provide "a complete copy of the lab's DNA file related to [Milam]'s case." Milam seeks to review electronic data to "evaluate the limitations in the DNA testing, investigate SWIFS's potentially biased testing methods, and assess whether other potential contributors can be included or excluded from the DNA profiles obtained from the evidentiary samples." Additionally, he argues that this data could demonstrate that SWIFS' conclusions that four mixed DNA samples from bite marks were "so unreliable that they should not have been admitted at trial." SWIFS requested advice from the Office of the Attorney General ("OAG") as to whether this information could be released. The OAG issued an opinion stating that the records Milam sought were not subject to disclosure under Texas Government Code

3

§ 411.147(c)(3) because the statute only applies to records held by the Texas Department of Public Safety. Milam's counsel then contacted Michael Jimerson, the Rusk County District Attorney, requesting that he provide the records Milam sought. Jimerson denied the request and ignored a formal letter. Milam filed a discovery motion in the convicting court, but Jimerson argued that it lacked jurisdiction. The court denied the motion.

Milam then filed this suit under 42 U.S.C. § 1983 seeking declaratory and injunctive relief against Jimerson, asserting that Texas' postconviction relief procedures are constitutionally inadequate. Specifically, he argues that his due process rights were violated because Texas' "post-conviction review procedures vest total, unreviewable discretion in the District Attorney to withhold [DNA] records and provides no alternative judicial or administrative process to obtain them." After the lawsuit was filed, Jimerson turned over more than 4,000 pages of DNA records; however, Milam still seeks electronic data "created as a byproduct of DNA testing." Jimerson moved to dismiss, and the district court granted the motion.

## II.

We first consider the district court's dismissal of Milam's § 1983 lawsuit. The district court largely based its dismissal on the fact that Milam "fail[ed] to allege how Chapter 64 deprived him of due process." Article 64 of the Texas Code of Criminal Procedure governs postconviction DNA testing. *See Pruett v. Choate*, 711 F. App'x 203, 206 (5th Cir. 2017). The district court also concluded that Milam's suit was an improper request for a writ of mandamus and that he did not provide sufficient factual allegations that his due process rights have been violated. Milam argues that the district court "fundamentally misunderstood either the nature of the due process claim Milam urged or the scope of the due process right" because he is not challenging Article 64 and is only requesting records related to DNA testing

and not more testing itself. Additionally, Milam asserts that the district court erred by concluding that there were no records that Milam has not already received. Jimerson argues that even if the district court erred in its interpretation of Milam's complaint, we can still affirm on any basis in the record. *Teague v. Quarterman*, 482 F.3d 769, 773 (5th Cir. 2007) ("We may affirm a district court's decision on any basis established by the record." (citation modified)).

As an initial matter, Jimerson asserts that Milam's lawsuit is time-barred. "[W]hen a prisoner pursues state post-conviction DNA testing through the state-provided litigation process, the statute of limitations for a § 1983 procedural due process claim begins to run when the state litigation ends." *Reed v. Goertz*, 598 U.S. 230, 237 (2023). The statute of limitations for § 1983 actions in Texas is two years. *See King-White v. Humble Ind. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015). Jimerson asserts that the statute of limitations began running, at the latest, in 2020 when the CCA adopted its findings on his subsequent writ of habeas corpus. However, Milam asserted in the trial court that his injury is ongoing and, in the alternative, the statute of limitations began running when the trial court denied his motion for discovery in May 2025. However, since we find no due process violation, it is unnecessary to decide this question.

Jimerson also argues that this suit is barred by the *Rooker–Feldman* doctrine. *See Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). However, Milam is not challenging the state court's decision to refuse his discovery request; he is challenging the constitutionality of Texas' postconviction relief scheme. Therefore, *Rooker–Feldman* does not apply. *Reed*, 598 U.S. at 234–35.

We review a district court's grant of a motion to dismiss *de novo*. *Carmona v. City of Brownsville*, 126 F.4th 1091, 1096 (5th Cir. 2025). In doing

25-70015
c/w No. 25-40579

so, we "must 'accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor.'" *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023) (quoting *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019)). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (citation modified). To avoid dismissal, "a plaintiff must plead sufficient 'facts to state a claim to relief that is plausible on its face.'" *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

The Constitution contains no "freestanding right to DNA evidence." *Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 72 (2009). Nevertheless, "a state-created right to postconviction procedures can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right." *Gutierrez v. Saenz*, 606 U.S. ----, 145 S. Ct. 2258, 2265 (2025). If the Due Process clause applies, the court "must then consider what process is due." *Reed v. Goertz*, 136 F.4th 535, 543 (5th Cir. 2025). Milam asserts that Texas has created a liberty interest "by permitting him to avoid execution and imprisonment upon a showing of sufficient evidence that he is actually innocent."

"The touchstone of due process is protection of the individual against arbitrary action of government," so "state-created rights, once created, are 'not arbitrarily abrogated.'" *Id.* (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). Still, states have "flexibility in deciding what procedures are needed in the context of postconviction relief." *Osborne*, 557 U.S. at 69. The court must then decide "whether consideration of [Milam]'s claim within

the framework of the State's procedures for postconviction relief offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation." *Reed*, 136 F.4th at 543 (citation modified) (quoting *Osborne*, 557 U.S. at 69).

However, precedent makes clear that there is "slim room for [Milam] to show that the governing state law denies him procedural due process." *Skinner v. Switzer*, 562 U.S. 521, 525 (2011). A state's postconviction relief procedures violate due process "only if they are fundamentally inadequate to vindicate the substantive rights provided." *Osborne*, 557 U.S. at 69.

Milam argues that Texas' postconviction "procedure regime as a whole, including the discretion they place in the District Attorney to withhold or provide access to evidence, have operated in this case to deprive Milam of his life and liberty interests without due process." Milam specifically argues that Texas' postconviction relief procedures have three major flaws: (1) an applicant cannot obtain discovery prior to filing a habeas petition; (2) the Texas statute that requires prosecutors to disclose exculpatory evidence does not have an enforcement mechanism and was passed in 2014, so it does not apply to defendants like Milam who were charged with crimes committed before; and (3) prosecutors have discretion over whether or not to withhold evidence unless courts have ordered discovery.

However, it is difficult for a plaintiff to meet the threshold set by *Osborne. See, e.g., Cromartie v. Shealy*, 941 F.3d 1244, 1252 (11th Cir. 2019) ("Every court of appeals to have applied the *Osborne* test to a state's procedure for postconviction DNA testing has upheld the constitutionality of it."). In Texas, a trial court loses its general jurisdiction "after a conviction becomes final" and reacquires it during state habeas proceedings, when it can

once again order discovery. *In re TDCJ*, 710 S.W.3d 731, 735–38 (Tex. Crim. App. 2025). After the initial habeas case has been decided, a defendant may file a subsequent habeas case but must demonstrate that "the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application . . . because the factual or legal basis for the claim was unavailable." Tex. Code Crim. Proc. art. 11.071, § 5(a)(1). An applicant must demonstrate that "the specific facts alleged, if established, would constitute a constitutional violation that would likely require relief from either the conviction or sentence." *Ex parte Campbell*, 226 S.W.3d 418, 421 (Tex. Crim. App. 2007). At this stage, an applicant is only required to make a *prima facie* showing and if there is

> a good faith basis for believing that discovery will yield evidence showing a constitutional violation, he can file a subsequent habeas application and allege in that application what discovery he needs, what he expects the discovery to show, why he expects the discovery to show it, and why he cannot get the evidence without the discovery order he seeks. He would also want to allege why the evidence was unavailable when he filed his previous application or what new law was unavailable or why he meets the innocence-gateway or punishment-gateway exception.

*In re TDCJ*, 710 S.W.3d at 738–39 (citation modified).

Milam cannot meet his burden to show that these procedures violate due process. He cites no case law to support his assertions that providing discovery only when a habeas case is being litigated and otherwise giving district attorneys discretion over what evidence to disclose is unconstitutional. In fact, the opposite is true. Federal courts have routinely upheld state postconviction relief procedures where discovery is based on court approval. *See, e.g.*, *Osborne*, 557 U.S. at 64 (finding Alaska's postconviction scheme constitutional when general discovery is allowed after

"a defendant presents newly discovered evidence that establishes by clear and convincing evidence that the defendant is innocent"); *Tevlin v. Spencer*, 621 F.3d 59, 70–71 (1st Cir. 2010) (holding that Massachusetts' postconviction relief procedures were constitutional when they provided for court-authorized discovery upon a prima facie showing); *Widmer v. Okereke*, No. 24-3054, 2025 WL 1432584, at *15 (6th Cir. May 19, 2025) (approving Ohio procedures that allow courts to permit discovery in postconviction petitions).

Furthermore, Milam did not even take advantage of Texas' postconviction relief procedures. He did not file his actual-innocence claim until after the district court dismissed this suit. *Osborne*, 557 U.S. at 71 ("It is difficult to criticize the State's procedures when [Milam] has not invoked them."). The Supreme Court has instructed that "lower federal courts are to defer to the judgment of state legislatures concerning the process due prisoners seeking evidence for their state court post-conviction actions." *McKithen v. Brown*, 626 F.3d 143, 153 (2d Cir. 2010). Allowing convicted defendants "to engage in a fishing expedition under the auspices of researching a claim . . . so that he might file a subsequent application in the future would open the floodgates to anticipatory subsequent-application discovery requests, seriously compromising the legislative purpose of limiting the amount of post-conviction habeas litigation." *In re TDCJ*, 710 S.W.3d at 738.

Milam also argues that Texas' postconviction relief scheme is constitutionally flawed because the statute requiring prosecutors to turn over exculpatory evidence only applies to crimes committed after it was adopted in 2014. However, he cites no case law for this proposition and, as discussed above, Texas' postconviction relief scheme has nevertheless offered him multiple avenues to seek discovery of the DNA records he seeks.

25-70015
c/w No. 25-40579

The district court also found that Milam's request for an injunction requiring Jimerson to release electronic data currently held by SWIFS "sounds in mandamus." This court has previously analyzed such requests for the release of evidence as an improper petition for a writ of mandamus. *Ramirez v. McCraw*, 715 F. App'x 347, 350 (5th Cir. 2017) (concluding that a § 1983 suit seeking an injunction requiring state officials to release biological material for DNA testing is an improper petition for a writ of mandamus). However, even if it is not, his due process claim has no merit. *See id.*

### III.

On September 17, 2025—only eight days before his scheduled execution—Milam also filed a motion for an order authorizing the district court to consider a successive petition for a writ of habeas corpus and requested leave to file a motion in excess of the word limit. In this motion, he asserts that new evidence demonstrates that his trial was rendered unfair by unreliable forensic evidence. He asserts that new scientific consensus (reached in 2023) shows that bitemark analysis is fundamentally unreliable, SWIFS' reinterpretation of the DNA evidence in August 2025 contradicts trial evidence that his DNA was found on several bitemarks on the victim, and that Blood Pattern Analysis ("BPA") relied on at trial was fundamentally unreliable given new scientific consensus based on the evolving science in the field.

Since Milam has already filed a habeas petition in federal court, he may not do so again unless we authorize it by finding that he has made a *prima facie* showing that "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence" and that these facts "would be sufficient to establish by clear and convincing evidence that . . . no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B); *In re Campbell*, 750 F.3d

25-70015
c/w No. 25-40579

523, 529–30 (5th Cir. 2014). This requirement has been met "[i]f . . . it appears reasonably likely that the application satisfies the stringent requirement[s]." *In re Morris*, 328 F.3d 739, 740 (5th Cir. 2003) (per curiam) (quoting *Bennett v. United States*, 119 F.3d 468, 469–70 (7th Cir. 1997)). He must also bring these claims within one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). However, the statute of limitations can be excused under the miscarriage of justice exception. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).

Some of his arguments regarding "new" evidence are either possibly or certainly time-barred and do not qualify for the miscarriage of justice exception under *McQuiggin*. However, even if we were to consider each of his claims, he cannot meet the standard that no reasonable factfinder would have found him guilty. There is still ample evidence a reasonable jury could use to convict him, including his confession,[1] the fact that he and his fiancée were the only ones in the house the night of the murder, his waiting to report the victim's death to the authorities, the presence of the victim's blood on his clothing, and his instructions to his sister to hide evidence. Without more, we cannot say that no reasonable factfinder could convict. *See Prince v. Thaler*, 354 F. App'x 846, 848 (5th Cir. 2009) (denying a motion to file a successive habeas petition when the petitioner "offer[ed] no affirmative evidence or testimony that [petitioner]'s version of events was scientifically possible, only that the State's scientific testing process was imperfect.").

---

[1] Milam told a nurse at the Rusk County jail: "I'm going to confess. I did it. But Ms. Shirley, the Blaine you know did not do this. My dad told me to be a man, and I've been reading my Bible. Please tell Jesseca [the victim's mother] that I love her." *Milam*, 733 F. App'x at 782.

25-70015
c/w No. 25-40579

Finally, Milam also argues that he is intellectually disabled and thus ineligible for the death penalty. This claim is premised on the state's trial expert, Dr. Proctor, writing a report that Milam was intellectually disabled in January 2021. Despite § 2244(b)(2)(B)(ii) requiring Milam to bring forth facts that establish clear and convincing evidence that no reasonable factfinder could find him guilty, he argues that evidence of his intellectual disability shows he is "innocent of the death penalty." He acknowledges that this court has previously rejected this argument in a similar circumstance. *In re Webster*, 605 F.3d 256, 257 (5th Cir. 2010). However, even if we were to accept his theory, he has nevertheless failed to bring his claim within the one-year statute of limitations. *In re Sparks*, 939 F.3d 630, 633 (5th Cir. 2019) (noting that *prima facie* evidence of intellectual disability "cannot bootstrap a plainly untimely claim.").

## IV.

Finally, Milam seeks a stay of execution. Courts consider four factors when determining whether to grant a stay:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation modified).

Milam is correct to assert that the risk of irreparable injury weighs heavily in his favor. *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982). However, Milam must still "present a substantial case on the merits when a serious legal question is involved and show that the balance of equities [i.e. the other three factors] weighs heavily in favor of granting the stay." *Pruett*, 711 F. App'x at 208 (quoting *Celestine v. Butler*, 823 F.2d 74, 77 (5th Cir.

25-70015
c/w No. 25-40579

1987) (per curiam)). Since he has failed to present such a showing in either his § 1983 suit or his motion to file a successive habeas petition, he is not entitled to a stay.

## V.

For the foregoing reasons, the order and judgment of the district court are AFFIRMED, the motions for a stay of execution and authorization to file a successive habeas petition are DENIED, and the motion for leave to file a motion in excess of the word limit is GRANTED.